456 S.E.2d 159

**Owens BROCKWAY and National Union Fire Insurance Company of Pittsburgh**

v.

**Joel E. EASTER, Jr.**

**Record No. 1312–94–1.**

Court of Appeals of Virginia, Norfolk.

April 25, 1995.

Ralph L. Whitt, Jr., Richmond (Jennifer G. Marwitz, Sands, Anderson, Marks & Miller, on briefs), for appellants.

Robert J. Macbeth, Jr., Norfolk (Rutter & Montagna, on brief), for appellee.

Present: BAKER and BENTON, JJ., and HODGES, Senior Judge.

BAKER, Judge.

Owens Brockway and National Union Fire Insurance Company of Pittsburgh (jointly referred to herein as employer) appeal from a decision of the Workers' Compensation Commission (commission) that awarded benefits to Joel E. Easter, Jr. (claimant) for an on-the-job injury sustained in the course of his employment with employer.

Employer contends that claimant is not entitled to an award and alleges that, in violation of Code § 65.2–306 and an established rule of employer,[1] claimant's injury was due solely to his willful misconduct. In relevant part, Code § 65.2–306 provides:

> § 65.2–306. **When compensation not allowed for injury or death; burden of proof.**—A. No compensation shall be awarded to the employee or his dependents for an injury or death caused by:
>
> 1. The employee's willful misconduct or intentional self-inflicted injury;

* * * * * *

---

1. Specifically, employer's defense to the claim was based upon employer's assertion that claimant willfully violated "lockout/tagout safety rules."

5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee;

\* \* \* \* \* \*

B. The person or entity asserting any of the defenses in this section shall have the burden of proof with respect thereto.

As specified in Code § 65.2–306(B), employer had the burden to prove that claimant's conduct, which caused his injury, was in "willful" disregard of a reasonable rule established by employer of which claimant was knowledgeable.

"Wilful" ... imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention. An intention to do an act that he knows, or ought to know, is wrongful, or forbidden by law. It involves the idea of premeditation and determination to do the act, though known to be forbidden. There cannot, however, be a wilful failure to perform an unknown duty.

\* \* \* \* \* \*

[The language used in this section covers something more than] negligence, however gross.

*King v. Empire Collieries Co.*, 148 Va. 585, 590–91, 139 S.E. 478, 479 (1927). To prevail on the defense of a willful violation of a safety rule, employer must prove that: (1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act. *Spruill v. C.W. Wright Construction Co.*, 8 Va.App. 330, 334, 381 S.E.2d 359, 360–61 (1989). If the employer carries its burden to show that the employee knew of the rule and intentionally violated it, the employee has willfully failed to obey the rule. *See Riverside & Dan River Cotton Mills, Inc. v. Thaxton*, 161 Va. 863, 172 S.E. 261 (1934).

Whether the rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and

fact to be decided by the commission and reviewable by this Court. But the questions of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of the employee's accident are issues of fact. *Mills v. Virginia Elec. & Power Co.*, 197 Va. 547, 551, 90 S.E.2d 124, 127 (1955). Upon review of the record, the commission found "that the employer's rule did not prohibit the activity which led to the claimant's injury."

 Having prevailed below, claimant is entitled to have the facts viewed most favorable to his claim. *States Roofing Corp. v. Bush Constr. Corp.*, 15 Va.App. 613, 616, 426 S.E.2d 124, 126 (1993). The record supports the commission's finding of the following facts: Claimant was a thirty-eight-year-old journeyman maintenance man at the time of his injury. He commenced work for employer on August 3, 1987. On February 16, 1993, claimant was instructed by his supervisor, Kevin Lievre (Lievre), to attend to a conveyor belt that was slipping on its pulley.

Two conveyor belts were involved in this injury, one that ran slightly above the other. Both belts are approximately one hundred and fifty feet long. The upper belt is the batch conveyor that moves raw materials. Slightly below it is the clean-out belt that catches material that falls from the batch conveyor. The belts are exposed to the elements. At the time of the accident, the clean-out belt had begun to slip on its pulley and ceased operating. When this happens, the procedure is to clean away any debris that may be interfering with the operation of the belt and to apply a material known as "non-stick" to the pulley or belt. This usually *increases the friction* and causes the pulley to engage the belt.

Both belts operate from a power source that is controlled from the furnace control room. However, the power source itself is apparently located at the opposite end of the belt where claimant was injured. Devices are also present that enable maintenance personnel to disconnect or "lockout" the power. Maintenance men also carry a two-way radio that enables them to stay in contact with the personnel in the

control room. On the day of the accident, however, one radio was not operating, and claimant did not have the advantage of communicating with another maintenance man.

Upon Lievre's instruction, claimant went to the far end of the clean-out belt to attempt to find the trouble. The power source was not "locked out" at either the control room or the drive pulley where claimant was working. Claimant applied "non-stick" twice but this did not remedy the problem. In a further attempt to locate the cause of the slipping, claimant placed his foot on the belt to increase the friction and get it started. While attempting this, the upper belt, which was not programmed to operate at the time, apparently completed its "off cycle" and turned on. As a result, claimant's right foot was carried into a pulley. Claimant was able to stop the pulley by activating switches that were within his reach. He was then able to reverse the pulley and disengage his foot.

Claimant testified that he had been instructed by his prior supervisor, Al Catrone, to use the step-on method to start the belts when the pulley was slipping. This practice was apparently followed until October 1991. At that time, employer conducted a safety meeting at which employees were trained in safety measures to be followed when cleaning, servicing, adjusting, or repairing machinery. No specific instructions were given regarding the two conveyor belts involved in this claim but only general instructions that applied to all moving machinery.

Detailed instructions were provided as to the "lockout" procedure to be followed by maintenance personnel, including claimant. The rule, however, is not clear as to the specific machinery or equipment covered. The rule's stated "purpose" is to protect employees: "by identifying hazardous energy sources, evaluating the potential hazards associated with these sources, and establishing a Lockout/Tagout Program."

Employer's First Report of An Accident, filed as required by the Workers' Compensation Act, reported that the injury occurred as follows: "Conveyor belt not running. Applied right foot to apply pressure to pulley head, conveyor automati-

cally started and pulled foot into belt." We must decide whether, at the time claimant sustained the injury, the record supports the commission's finding that he was troubleshooting or whether, instead, he was making a repair. The parties agree that if the accident occurred while claimant was trouble-shooting, the lockout/tagout rule does not apply.

The commission specifically held that claimant "was not adjusting or repairing the belt which caused his injury." Evidence in the record supports that finding. Employer does not dispute that claimant was assigned the task of discovering the cause of a belt slipping on its pulley and not moving as the belt was required to do if it performed its purpose. The usual work performed to correct the deficiency was to clean off debris or apply a "sticky" substance that increases the friction. Neither of these measures corrected the trouble. Still pursuing his investigatory assignment, claimant applied foot pressure to the belt to see if increased friction might cause the pulley to move the belt. This action would not have worked if the power source had been locked out.

The record clearly established that employer had adopted a reasonable safety rule, trained its employees in its application, and enforced the rule. We find upon review, however, evidence in the record to support the commission's finding that the rule did not apply in this particular case. Claimant testified that he could not engage the belt with the pulley unless the pulley was operating. His successor, Brian Barnett, corroborated this testimony. The power source itself was within claimant's reach as he attempted to engage the belt with the pulley, and, therefore, it could be disconnected quickly in the event of an accident. The record further shows that the use of alternative methods of engaging the belt, *i.e.*, the use of a bar as recommended by the plant engineer, also carried some risk of injury. We hold that credible evidence supports the commission's finding that claimant was engaged in a "troubleshooting mission" and that, under these circumstances, it was permissible to work on the belt with the drive pulley operating. Upon this finding, employer's defense of willful misconduct or violation of a safety rule cannot prevail.

Evidence in this record supports the commission's finding, and we cannot say that it was plainly wrong. Accordingly, the decision of the commission is affirmed.

*Affirmed.*