COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


TARMAC AMERICA, INC. AND
 INSURANCE COMPANY OF THE
 STATE OF PENNSYLVANIA
                                        MEMORANDUM OPINION[*]
v.    Record No. 1242-98-2                  PER CURIAM
                                         DECEMBER 8, 1998
ROBERT LOUIS SALMON, JR.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (S. Vernon Priddy, III; Patsy L. Mundy;
              Sands, Anderson, Marks & Miller, on brief),
              for appellants.

              (Ruth E. Nathanson; Maloney, Huennekens,
              Parks, Gecker & Parsons, on brief), for
              appellee.


     Tarmac America, Inc. and its insurer (hereinafter referred

to as "employer") contend that the Workers' Compensation

Commission ("commission") erred in finding that employer failed

to prove that Robert Louis Salmon, Jr. (1) committed willful

misconduct which barred his claim pursuant to Code

§ 65.2-306(A)(1); or (2) willfully breached a reasonable rule or

regulation adopted by employer which barred his claim pursuant to

Code § 65.2-306(A)(5).  Employer also contends that Salmon failed

to prove that he sustained an injury by accident arising out of

his employment on May 30, 1997.  Upon reviewing the record and

the briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the commission's

_____
          [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

decision.  <u>See</u> Rule 5A:27.

<u>FACTS</u>

On appeal, we view the evidence in the light most favorable to the prevailing party, and we do not retry the facts or reweigh the preponderance of the evidence.  <u>See</u> <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Salmon began working for employer in January 1997 as a cuber operator.  He operated various machines, including the splitter machine.  That machine split and cut pieces out of concrete blocks.  Salmon had operated the splitter machine on six to twenty-four occasions before the day of his injury.

On May 30, 1997, after operating the splitter machine for one to one and one-half hours, a block came through the machine after being cut, and the blade would not move.  Salmon removed the front piece of the block and saw a chunk of cement remaining in the machine.  Salmon believed that he had time to remove the chunk, because no block was moving, which indicated that the blades were not moving.  As he reached in to remove the chunk, the blades began to move, causing serious injuries to the fingers on his left hand.

Salmon had reached into the same area of the machine on prior occasions and had not been disciplined or corrected for doing so.  Salmon knew the location of the blades.  He stated that he would not have put his hand in the path of the blades if he had known they were moving.  Salmon's only training on the

splitter machine occurred when he watched another employee operate the machine. Salmon testified that employer never specifically told him not to place his hands inside the machine, but only told him not to get his hands caught in the machine. No supervisor had ever instructed Salmon on how to remove a chunk of cement from the machine or ever corrected him with respect to the manner in which he operated the machine. Salmon stated that he had reached into the machine to remove chunks on prior occasions and that other employees did the same thing. He never saw any employee reprimanded for the manner in which they removed the chunks. Salmon was never instructed that when a chunk fell near the blade, he was to either shut off the machine or perform a lock out/tag out procedure. In addition, he never saw any employee perform the lock out/tag out procedure on the splitter.

Daniel Longworth, Salmon's former night supervisor and a current machine operator, testified that he showed Salmon how to operate the splitter machine. Longworth stated that "chunks were left inside the blades and you just knocked them out with your hand." Longworth claimed that there was enough time to safely remove the chunks in this manner before the blade came on again, and stated that all employees operated the machine the same way.

Sherwood Randolph, another employee, testified that he occasionally removed chunks from the splitter machine with his hand. David Church, the employee working with Salmon at the time of the accident, stated that he was not aware of any particular

company rule regarding reaching into the splitter machine. He stated that if a chunk was not pushed off by the next block, he would remove it. Ricky Stephens, another employee, testified that on occasion, he had to reach into the machine very quickly and remove chunks, as there was no other way to remove them. Anthony Goode, another employee, admitted that the employees put their hands into the machine to remove chunks, but denied that they put their hands directly in the path of the blades.

Victor Scopel, the night shift supervisor, testified that he spent ninety percent of his time on the plant floor observing employees. Scopel had observed Salmon operating the splitter machine on numerous occasions before his accident. Scopel admitted that he had never seen Salmon operate the splitter machine in an unsafe or hazardous manner. Scopel identified various warning labels on the machine.[1] Scopel testified that Salmon violated a safety rule when he placed his hand in a danger zone, and something unexpected happened. Scopel stated that an employee should not place his hand in front of the blade while the machine is on. But rather, if a chunk fell to the side and the block jammed, the employee should notify the operator to back up the bar, and the operator would remove the block from the back

---

[1] Employer did not appeal to the full commission the deputy commissioner's finding that Salmon was not required to perform the lock out/tag out procedure, nor did the deputy commissioner make any finding of willful misconduct as it related to Salmon's failure to heed warning signs. As a result, the commission refused to consider those issues. Accordingly, we will not consider those issues on appeal.

of the machine. However, Scopel admitted that an employee operating the splitter machine was required to remove chunks of cement with his hands from time to time. In fact, Scopel had seen Salmon do so on prior occasions.

## I. WILLFUL MISCONDUCT

Code § 65.2-306(A)(1) provides as follows: "No compensation shall be awarded to the employee . . . for an injury . . . caused by: 1. The employee's willful misconduct or intentional self-inflicted injury . . . ." "Whether an employee is guilty of willful misconduct is a question of fact to be resolved by the commission and the commission's finding is binding on appeal if supported by credible evidence." Adams ex rel. Boysaw v. Hercules, Inc., 21 Va. App. 458, 463, 465 S.E.2d 135, 137 (1995).

In holding that employer failed to prove that Salmon committed willful misconduct, the commission found as follows:

> Salmon admitted that he knew that his hand was in the path of the blades, and knew that the blades posed some danger. He admitted fault after the accident, and admitted that he should not have performed the act which resulted in injury. We find such admissions establish no more than negligence, and confirm the obvious. Anyone, in hindsight, would have concluded that he should not have placed his hand in the machine, when such act resulted in severe injuries.
> We find that Salmon and other employees routinely reached into the path of the blades in order to perform their job of removing the chunks which had fallen. They received no formal training. The employer promulgated no specific rule prohibiting an employee from reaching into the machine to remove the chunks.
> At the time of his injury, we find that

- 5 -

> Salmon was performing a normal and necessary part of his job, and that he placed his hand in a position that would be expected. Salmon testified, "I didn't think. I just -- it was my job to get it out." Although his act may have been negligent, or even grossly negligent, it does not rise to the level of willful misconduct. Contrary to the employer's assertion, we find that he did not intend to injure himself.

The testimony of Salmon and his co-workers constitutes credible evidence to support the commission's factual findings. The record clearly established that employer did not train or instruct its employees with respect to the method of removing chunks from the splitter machine. In addition, the employees routinely reached into the machine with their hands to remove a chunk, similar to Salmon's conduct when he was injured. No evidence proved that Salmon intended to commit an act which he knew, or should have known, was wrongful or forbidden.

> "'Wilful' . . . imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention. An intention to do an act that he knows, or ought to know, is wrongful, or forbidden by law. . . . There cannot, however, be a wilful failure to perform an unknown duty."

Brockway v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995) (quoting King v. Empire Collieries Co., 148 Va. 585, 590-91, 139 S.E. 478, 479 (1927)).

Because credible evidence supports the commission's findings, we cannot say that the commission erred in ruling that employer failed to prove that Salmon was guilty of willful misconduct.

- 6 -

## II. WILLFUL VIOLATION OF A SAFETY RULE OR REGULATION

Code § 65.2-306(A)(5) provides as follows: "No compensation shall be awarded to the employee . . . for an injury . . . caused by: . . . 5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . ."

To establish a willful violation of a safety rule, employer was required to prove that: "(1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act." Brockway, 20 Va. App. at 271, 456 S.E.2d at 161.

> Whether the rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, [are] mixed question[s] of law and fact to be decided by the commission and reviewable by this Court. But the questions of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of the employee's accident are issues of fact.

Id. at 271-72, 459 S.E.2d at 161.

> The safety rule at issue provided as follows: Never allow any part of your body to be in an awkward or precarious position. An awkward or precarious position is one that would result in your involvement in an accident if an unplanned event occurs.

The commission refused to find that employer proved willful misconduct due to the alleged violation of such an ambiguous rule. In so ruling, the commission found as follows:

- 7 -

[Salmon] testified that he did not know what this rule meant. We agree. The rule, as written, is so vague that it fails to place an employee on notice of the proscribed conduct.

   *      *      *      *      *      *      *

The employer's rule could cover almost any conduct on the part of an employee. Walking in the front door of the employer's premises could constitute an "awkward or precarious position," because it would result in the employee's "involvement in an accident" if an unplanned event occurred, e.g., the ceiling fell in. . . .
The employer promulgated a safety manual 27 pages long. If it desired to prohibit employees from placing their hands in the path of the Splitter Machine blades, it could easily have done so. The employer chose not to do so.

The testimony of Salmon and his co-workers constitutes credible evidence to support the commission's factual findings. Those findings support the commission's conclusion that "the employer never specifically instructed Salmon, or any other employee for that matter, not to place [his] hands in such a position." Based upon this record and the ambiguity of the purported safety rule, we cannot say that the commission erred in ruling that employer failed to prove that Salmon willfully violated a reasonable safety rule.

### III. INJURY BY ACCIDENT

Section I. of this opinion addressed the argument made by employer with respect to the commission's finding regarding this question. Thus, we will not separately address this question.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed</u>.