COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


MARION LEE WALLACE, JR.
                                        MEMORANDUM OPINION* BY
v.    Record No. 2596-00-1           JUDGE JERE M. H. WILLIS, JR.
                                             JUNE 5, 2001
PRODUCTION SUPPORT SERVICES AND
 GREAT AMERICAN INSURANCE COMPANY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Thomas W. Carpenter (Thomas W. Carpenter,
              P.C., on brief), for appellant.

              Daniel E. Lynch (John T. Cornett, Jr.;
              Williams & Lynch, on brief), for appellees.


     On appeal from a decision of the Workers' Compensation

Commission, Marion Lee Wallace, Jr. contends that the commission

erred in holding that his claim for benefits was barred by his

willful violation of a safety rule.  Finding no error, we affirm

the decision of the commission.

                         I.  BACKGROUND

     On appeal, we view the evidence in the light most favorable

to the party prevailing below.  See R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

     So viewed, the evidence established that on October 9,

1998, Wallace was employed as a forklift warehouse worker with

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Production Support Services (PSS), which had assigned him to work at Canon of Virginia's Newport News plant. On that day, Wallace and a co-worker, Patrick Wade, were hanging a safety banner on a fence in the plant. Wallace and Wade tried to obtain a lift cage, but the cage was being used elsewhere in the plant. They put a wooden pallet on a forklift and used it as an elevator so that Wallace could stand on it and be lifted to secure the banner.

Wallace was lifted approximately "[f]ifteen or twenty feet" and tied one end of the banner. He hung on the fence for thirty to forty seconds while Wade cleared a space, and then he stepped back onto the pallet and secured the other side of the banner. Upon coming down, he observed that the banner was crooked. He went up again. The pallet "busted . . . . It just split." Wallace fell, injuring his head, shoulder and knee.

Wallace admitted that he was experienced with forklifts. He had previously worked for another company as a safety supervisor and forklift operator. He further admitted that when he began working for PSS, he was shown a forklift safety video and was given a test on forklift operation. He received a forklift safety certificate on January 23, 1998, reflecting that he scored 100% on the test. He recalled the video saying that one should not be raised up on the forks of a forklift, but he contended that it said nothing about a person's being raised on a pallet. He recalled nothing about using a cage lift.

-

Wallace testified that he saw no danger in being raised on a pallet. He noted that the wooden pallets held industrial items weighing anywhere from 200 pounds to two tons. He weighed only 165 pounds. He denied that being elevated on a pallet was a violation of PSS or Canon's safety rules. He acknowledged that neither Richard Hamlin nor Dan Tucker told him to proceed that way.

Booker T. Young, PSS's general manager, testified that Wallace was shown a forklift video, which was approved by OSHA and Canon of Virginia, after which he took a test. He confirmed that the safety video forbade lifting personnel on the forks of a forklift. He admitted that it did not specifically mention the use of a pallet, but said that it emphasized the necessity of using a cage.

Young further testified that personnel were to be lifted by a forklift only while they were within a safety cage and that this rule was strictly enforced, both by PSS's on-site supervisor and by the supervisor for the company where the person was assigned, in this case Hamlin. He stated that this rule was in place for the workers' "individual safety" and that other employees had been terminated for forklift violations because there are "no second chances regarding safety while operating the forklift."

Richard Hamlin, group leader for the receiving area at the time of the accident, testified that on October 9, 1998, as he

-

does every morning, he held a meeting with his group.  At this meeting, he informed the group of "ten to twelve" things that had to be done that day.  He testified that hanging the safety banner was one of those things.  He said that he did not assign this task specifically to Wallace, but that Wallace took it upon himself.

Hamlin further testified that the proper procedure for hanging the banner would have been for Wallace and Wade to obtain either a manual crank lift or a safety cage to be used with the forklift.  He stated that he did not see Wallace on the pallet on the forklift.  He admitted that he saw Wallace standing on a metal pipe holding onto the fence, and he told him to "get down."  He stated that he first learned that Wallace had used a pallet to hang the banner after the accident.  He testified that in his twelve years, he knew of no instance where there were not enough lifts or cages available for people who needed to be lifted.  He said if the proper equipment were not available, a worker should wait until it was.

The deputy commissioner held that Wallace's accident and injuries resulted from his willful violation of a safety rule and denied his claim for benefits.  The full commission affirmed.

## II.  <u>WILLFUL VIOLATION OF A SAFETY RULE</u>

Code § 65.2-306(A)(5) provides as follows:  "No compensation shall be awarded to the employee . . . for an

-

injury . . . caused by: . . . 5.  The employee's willful breach
of any reasonable rule or regulation adopted by the employer and
brought, prior to the accident, to the knowledge of the employee
. . . ."

To prevail on the defense of willful violation of a safety
rule, the employer must prove that:  "(1) the safety rule was
reasonable; (2) the rule was known to the employee; (3) the rule
was promulgated for the benefit of the employee; and (4) the
employee intentionally undertook the forbidden act."  Brockway
v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995).

> Whether the rule is reasonable and applies
> to the situation from which the injury
> results, and whether the claimant knowingly
> violated it, is a mixed question of law and
> fact to be decided by the commission and
> reviewable by this Court.  But the questions
> of whether an employee is guilty of willful
> misconduct and whether such misconduct is a
> proximate cause of the employee's accident
> are issues of fact.

Id. at 271-72, 456 S.E.2d at 161.  Factual findings made by the
commission will be upheld on appeal if supported by credible
evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App.
512, 515, 382 S.E.2d 487, 488 (1989).

The forklift safety video, which was admitted into
evidence, under the category of "Prohibited Actions" states:
"Especially never allow anyone to stand or ride on the forks or
use the forks as an elevator.  The only approved method of

-

hauling or hoisting workers is in a secured platform or safety cage."

In ruling that PSS proved that Wallace willfully violated this safety rule, the commission found as follows:

> Canon and [PSS] had a rule prohibiting the use of lifting a worker on a forklift without a safety cage. This rule was designed to provide for the safety of employees. [Wallace] knew the rule, inasmuch as the safety videotape specifically noted under prohibited acts that individuals were not to ride on forklifts, nor were they to be lifted. The video specifically stated that the only way to lift people was in a caged forklift.
>
> [Wallace] does not contend that he did not perform the act. In fact, [he] testified that he did not believe it was dangerous. There is no evidence that there was any type of emergency or time limit for putting up the banner. While [Wallace] indicated that the first task he was assigned that morning was to put up the banner, Mr. Hamlin testified that no one was assigned this task. [Wallace] elected to do so on his own. [Wallace] indicated his co-worker went to get a caged forklift, but they were being utilized elsewhere. This is contrary to the testimony of Mr. Hamlin, who indicated that in his 12 years there, he had never experienced a time when the proper equipment, be it a caged forklift or another vehicle used for this purpose was not available. Even if the appropriate equipment was not available, the evidence fails to establish that this task could not have been deferred until such time as it could be procured.

The commission's factual findings are supported by credible evidence, including the testimony of Hamlin and Young. Their testimony and review of the safety video support the finding

-

that a rule prohibited lifting a worker on a forklift without a safety cage and that this rule was designed to provide for the safety of employees. Wallace knew the rule. The safety video specifically noted that individuals were not to ride or be lifted on forklifts. The video stated that people should be lifted only in a cage. Wallace violated this rule and as a consequence was injured. The commission did not err in ruling that he is barred from receiving benefits under the Workers' Compensation Act.

We affirm the commission's decision.

Affirmed.

-