COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


HUGO ZELEDON

MEMORANDUM OPINION* BY
v.        Record No. 0952-05-1                JUDGE ROBERT P. FRANK
                                              OCTOBER 25, 2005
GCR, INC., UNITED CONTRACTORS OF VIRGINIA
 GROUP SELF-INSURANCE ASSOCIATION AND
 PETRAUSKIS ENTERPRISES, INC.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Amy C. Stallings (Thomas L Hunter & Associates, P.C., on brief),
        for appellant.

        Andrew R. Blair (Blair Law Offices, on brief), for appellees
        GRC, Inc. and United Contractors of Virginia Group
        Self-Insurance Association.

        No brief or argument for appellee Petrauskis Enterprises, Inc.


        Hugo Zeledon, appellant/claimant, appeals a decision by the Workers' Compensation

Commission denying him benefits.  Appellant claims the commission erred in finding:

(1) claimant willfully violated a known safety rule; and (2) the alleged safety rule was strictly

enforced.  For the reasons stated, we affirm the commission.

        Claimant began his employment with Petrauskis Enterprises in January 2003.  Petrauskis

Enterprises is a primary contractor for GCR, Inc. and is engaged in the business of erecting new

homes and sheeting the walls and the roofs of those new homes.  Joseph Petrauskis, president of

Petrauskis Enterprises, hired claimant as a "helper, not as a laborer."  As an employee, claimant

worked as a roofer.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant, whose native language is Spanish, had lived in this country for approximately five and one-half years. He testified that when his bosses spoke to him, it was in English. If he did not understand the conversation, "they used to clear it up for me." Claimant testified that if he did not understand an instruction, he would ask them to repeat themselves and/or clarify the communication.

Petrauskis testified claimant understood 85% of what was communicated to him in English, and if claimant did not understand, it was usually over a number, but not as to "the work style that we were doing." He said claimant had no difficulty communicating.

Petrauskis Enterprises had a policy and guidelines document, written in English, that established certain safety guidelines, including "[t]oe boards[1] will be installed in all roofs prior to installation of the 2nd row of sheathing. Failure to do so will result in immediate termination."

Petrauskis testified the policy and guidelines document was given to claimant when he became employed. Petrauskis verbally reviewed the policy and guidelines with claimant. Not only did Petrauskis explain the toe board requirement, but "it was demonstrated to him on a number of houses when he began working on the roof."

Prior to the accident, claimant had done roofing for Petrauskis for approximately six months, working on five other houses. Claimant installed toe boards on all of the previous houses, and he had installed toe boards 80 to 90 times before this accident. The work was repetitious, and every house was the same. Prior to the accident, claimant had correctly installed toe boards.

On the day of the accident, Petrauskis testified that he had seen that no toe boards were in place when he arrived at the job site that morning at 7:00 a.m. Petrauskis testified that he

---

[1] A toe board is a two-by-four piece of lumber nailed to the roof during construction to prevent a worker from sliding off the roof, providing a vertical foothold on a sloping surface.

specifically told claimant early that morning to place toe boards prior to getting on the roof. Claimant did not appear confused or ask him to repeat the instructions.

Claimant began working at 7:30 a.m. The accident took place at 11:00 a.m. Claimant had worked on the roof for three and one-half hours without any boards in place. Shortly before the accident, claimant entered the roof from "inside the house." He walked down the roof to nail the 14-foot toe board in place. He finished nailing down one end and moved to the other end of the board to nail the other end when he slipped. Because the toe board was not nailed down at both ends, the board gave way and claimant fell 12 feet to the ground, injuring himself. At the time of the accident, claimant was on the third row of plywood, trying to install "[the] toe boards from the top of the third sheet instead of off the ladder."

Instead of installing two rows of plywood and then installing the toe boards, Petrauskis had instructed claimant to install the first row while standing inside on the rafter. Then the first toe board should be installed while the worker remains standing on the rafter. Once the first toe board is installed, the worker would then install the second row of plywood while standing on the toe board. That procedure would be repeated for every row. Petrauskis testified, "[claimant] should have never been standing on the first sheet until the first toe board was [installed]." He further stated, "[with toe boards in place] this accident would have never have taken place."

Petrauskis did not become aware of claimant's failure to obey his instructions to install the toe boards until after claimant fell.

Petrauskis also testified that employees were warned that they must comply with the rule to install toe boards, as instructed. Failure to do so resulted in disciplinary action and then termination. Petrauskis testified that employees had been reprimanded and terminated for failing to install toe boards. Another employee was disciplined for failing to install toe boards the day before this accident.

The full commission affirmed the deputy's decision that claimant's injury was caused by his own willful misconduct, thus denying his claim for benefits.

The commission concluded:

> Based on the evidence presented, it is clear that the claimant did not install toe boards prior to laying three rows of plywood. The evidence indicates that he was instructed to install one toe board before laying each row of plywood. The claimant was told to stand on the rafters and trusses while he installed the first toe board, and to stand on the previous toe board to nail down each successive board. At 7 a.m. on the day of the fall, Petrauskis specifically instructed him to install the toe boards because he had failed to do so the previous day. The claimant worked on the roof for three to three and one-half hours, and failed to install the toe boards until sometime after 11 a.m. He fell while following an improper procedure for installing the toe boards. The claimant failed to follow the rule by neglecting to install the toe boards initially. Then he defied Petrauskis' direct instruction to install the toe boards "before doing anything else on the roof," and continued to work on the roof for at least three hours. Finally, the claimant failed to follow the proper procedure associated with the rule, by climbing down the plywood, as opposed to using a ladder, to install the toe board. We find that he intentionally violated the safety rule.
>
> Petrauskis confirmed that the safety rule was enforced. He stated that he informed his employees that failure to follow the rule was grounds for termination. Petrauskis further indicated that he had terminated employees for failing to follow the rule requiring the installation of toe boards.

## ANALYSIS

Claimant contends he did not willfully violate any safety regulations. He argues he was unaware of the rule requiring the installation of toe boards or how the boards were to be installed. Further, he maintains Petrauskis did not enforce the rule.

Code § 65.2-306 states in part:

> A. No compensation shall be awarded to the employee or his dependents for an injury or death caused by:
>
>> 1. The employee's willful misconduct or intentional self-inflicted injury.

- 4 -

\* \* \* \* \* \* \*

> 5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee.

\* \* \* \* \* \* \*

> B. The person or entity asserting any of the defenses in this section shall have the burden of proof with respect thereto.

As specified in Code § 65.2-306(B), employer had the burden to prove that claimant's conduct, which caused his injury, was in "willful" disregard of a reasonable rule established by employer of which claimant was knowledgeable.

> "Wilful" . . . imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention. An intention to do an act that he knows, or ought to know, is wrongful, or forbidden by law. It involves the idea of premeditation and determination to do the act, though known to be forbidden. There cannot, however, be a wilful failure to perform an unknown duty.

King v. Empire Collieries Co., 148 Va. 585, 590, 139 S.E. 478, 479 (1927).

> To prevail on the defense of a willful violation of a safety rule, employer must prove that: (1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act. Spruill v. C.W. Wright Construction Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989). If the employer carries its burden to show that the employee knew of the rule and intentionally violated it, the employee has willfully failed to obey the rule. See Riverside & Dan River Cotton Mills, Inc. v. Thaxton, 161 Va. 863, 172 S.E. 261 (1934).

Brockway v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995).

The defense may be established without the necessity of proving that the employee, with the rule in mind, purposefully determined to break it. Riverside, 161 Va. at 872, 172 S.E. at 264. It is sufficient to show that, knowing the safety rule, the employee intentionally performed the forbidden act. Id.

Whether the safety rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and fact to be decided by the commission and reviewable by this Court. Brockway, 20 Va. App. at 272, 456 S.E.2d at 161. But the question of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of the employee's accident are issues of fact. Id. (citing Mills v. Virginia Electric & Power Co., 197 Va. 547, 551, 90 S.E.2d 124, 127 (1955)).

On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below. Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003); Tomes v. James City (County of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002). Also, "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal." Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985). Rather, we are bound by the commission's findings of fact as long as "there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved," Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988) (emphasis in original), even if there is evidence in the record that would support a contrary finding, Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Thus, we consider whether the evidence supports the commission's finding of willful misconduct.[2] Claimant only contests whether or not he had knowledge of the rule and whether he intentionally undertook the forbidden act.

---

[2] Claimant does not contend the safety regulation is unreasonable nor does he claim the failure to comply with the safety rule is not causally related to his injury.

- 6 -

The commission found Petrauskis' testimony to be credible and rejected claimant's testimony. While claimant primarily spoke Spanish, the commission found that claimant understood English and was instructed to install toe boards before climbing on the roof. Petrauskis advised claimant of the necessity to install toe boards and showed him how to do so. He was told to stand on the rafters to install the first toe board and to stand on the toe board to install subsequent plywood sheeting. Around 7:30 a.m. on the day of the accident, Petrauskis specifically told claimant to install the boards before he got on the roof. Contrary to these instructions, claimant worked on the roof for three and one-half hours prior to his attempt to install the first toe board. He failed to initially install the toe boards the day before and then failed to install them the day of the accident, despite Petrauskis' admonition to install the toe boards "before doing anything else on the roof." He then failed to follow the proper installation procedure by climbing down the plywood instead of using a ladder. We find that credible evidence supports the commission's finding that claimant engaged in willful misconduct.

Claimant contends that even if he violated the rule, his employer did not enforce it. "[T]he employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule." Buzzo v. Woolridge Trucking, 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993).

Whether the evidence was sufficient to demonstrate that the safety rule was not strictly enforced is a mixed question of law and fact, and the commission's ruling is not binding on appeal. See Virginia Electric & Power Co. v. Kremposky, 227 Va. 265, 270, 315 S.E.2d 231, 234 (1984). The facts do not support claimant's argument. Petrauskis testified that employees were uniformly disciplined for not installing toe boards. Petrauskis advised employees that failure to comply with this rule would lead to termination. In fact, Petrauskis reprimanded and

later terminated an employee for violation of this rule. The evidence supports the commission's finding of enforcement.

## CONCLUSION

For the foregoing reasons, we find that the commission did not err in finding that claimant willfully violated a known safety rule and that the safety rule was strictly enforced. Accordingly, the decision of the commission barring claimant's recovery is affirmed.

Affirmed.