COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

UNPUBLISHED

KLOCKNER PENTAPLAST OF AMERICA AND
  HARTFORD UNDERWRITERS
  INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.     Record No. 1348-20-2              CHIEF JUDGE MARLA GRAFF DECKER
                                                          JULY 27, 2021
BEVERLY HOPE MILLER

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Warren H. Britt (Anne C. Byrne; Britt, Byrne & Warren, PLLC, on
            brief), for appellants.

            Daniel Y. J. Park (Elyse H. Stiner; Commonwealth Law Group, on
            brief), for appellee.


        Klockner Pentaplast of America and Hartford Underwriters Insurance Company

(collectively the employer) appeal a decision awarding workers' compensation benefits to

Beverly Hope Miller (the claimant). The employer suggests that the Virginia Workers'

Compensation Commission erred by concluding that the employer did not meet its burden of

proving that the claimant was injured because she intentionally violated a known safety rule and

by awarding benefits as a result. The claimant disputes this suggestion and requests sanctions.

We hold that the evidence supports the Commission's decision to award benefits. Nevertheless,

on the issue of sanctions, we conclude that the employer's assignments of error were not totally

unsupported by fact and law, and therefore were not frivolous as the claimant suggests.

Consequently, we affirm the award of benefits and deny the claimant's request for sanctions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

On January 9, 2020, the claimant injured her hand while working in the employer's manufacturing plant. The claimant's job duties included mixing bulk materials and using a "fork truck" to move the necessary dry and liquid components. She injured her left hand when it was crushed between the fork truck she was operating and a metal crate.

The claimant sought benefits for her injuries pursuant to the Workers' Compensation Act. The employer defended the claim on the ground that she was injured because she intentionally violated a known safety rule requiring her to keep a clear path while operating the fork truck.

The evidence presented during the hearing in the Commission established that the claimant used the fork truck approximately three to four times per hour and had received repeated training on its use during her seventeen years of employment. She earned a perfect score on her most recent recertification test in 2019 and knew she was required to always keep a clear path while operating the device.

Additional evidence established that the fork truck weighed 8,000 pounds and was a "walk-behind" rather than "ride-on" device. Operating the truck required manipulating its handle. One handle position permitted the operator to engage the throttle, while another position prevented the truck from operating.

The claimant explained that her job involved "running two lines" containing multiple machines. She was required to stock materials for the machines quickly using the fork truck, and space was limited under the best of circumstances. The claimant said that she had only an

---

[1] "'On appeal from a decision of the . . . Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below,' in this case, [the claimant]." City of Charlottesville v. Sclafani, 70 Va. App. 613, 616 (2019) (first alteration in original) (quoting Anderson v. Anderson, 65 Va. App. 354, 361 (2015)).

"alleyway to work in" and that employees were "constantly trying to keep the path open" for "moving the material" around. She provided details regarding the single "path," stating that in two places where the machines were located, she had "[j]ust enough" room to place the pallet containing the material, "pull [the fork truck] back out, and go."

On the day of the accident, the claimant was aware that several metal crates were in the area. She noted that despite the presence of a large sign on the wall identifying where the metal crates should be placed, someone had put "three or four extra ones" in the wrong place in the alley. The claimant explained that the fork truck she used was not large enough to move those metal crates safely.

Despite the improper placement of the crates, the claimant was performing her job. After delivering one pallet of material to the position stand closest to the metal crates, the claimant successfully moved the fork truck away from the pallet. She then transported a second pallet of material into position directly behind the first one without difficulty. Believing that she had enough room to maneuver the fork truck out safely as she had done after moving the first pallet, the claimant began to move it away from the second pallet. When she took a few steps toward the metal crate and began to make a left turn, she "realized" that she was "not going to make it." She "put her left hand against the metal [crate]," used her right hand to move the fork truck handle to the "stop" position, and "tr[ied] to get out of the way." The claimant believed that throwing up the handle would make the fork truck stop, albeit perhaps not instantaneously. While she was looking toward the crate and away from the truck, it "roll[ed] into [her] hand" and pushed it into the metal bars on the crate, causing her injuries. During various portions of her testimony, the claimant demonstrated for the deputy commissioner how the accident happened by "pretend[ing]" that "the witness stand [w]as the fork truck."

The claimant was out of work for a period of time due to the injury. About a month after she returned to work, she received a written reprimand and suspension for using the fork truck improperly at the time of her injury. The reprimand stated that she had used the fork truck improperly by walking backward while operating it. The document did not indicate that she had violated the rule requiring the operator to keep a clear path. The claimant refused to sign the reprimand because she believed it incorrectly described what happened. She testified that she "act[ed] in accordance with [her] training" at all times.

On cross-examination, counsel for the employer asked the claimant why she did not notify someone that the metal crates were in the wrong place. She replied, "I did." She explained that she had told her supervisor days earlier that the supplier was "putting stuff just anywhere" and he responded simply, "Yeah, I know." When the employer's counsel asked the claimant why she continued to work around the improperly placed metal crate on which she injured herself, she said that her job was to load the position stands serving the machines on her line and that she "ha[d] to put [her] material there." She further explained that she had only one machine on which she could use that particular type of material and did not "have an option to say, 'Oh, well, there's not going to be a clear path, I can't use [that machine today].'"

Counsel for the employer responded by characterizing her action as "ma[king a] decision to operate the forklift irrespective o[f] whether . . . [she] ha[d] a clear path." The claimant disagreed, insisting she in fact "*had* a clear path." (Emphasis added). She noted that she "moved [the material] in there just fine." The clamant explained that once she "s[aw that she] wasn't going to make [the turn], [she] stopped." The employer's counsel asked once again, "You don't have time to see if you've got a clear path?" The claimant responded, "Yeah, I have time."

The employer presented testimony from Charles Doane, its manager of environmental health, safety, and security, and Lance Grubb, the claimant's immediate supervisor. According

to Doane, the fork truck would not stop instantly due to its weight. He opined that if the claimant was operating the fork truck in the manner she indicated, she violated the "clear path" safety rule. Doane further explained that even though the pallet "went in fine," the claimant would need more than an additional three feet of clearance to withdraw the forks from the pallet and back out. He also theorized that the claimant was walking backward at the time or she would not have injured her hand. Lance Grubb similarly opined that the claimant must have been walking backward at the time of the accident. He admitted, however, that he did not see the accident or the position of the fork truck immediately after it. Finally, neither man testified that the claimant had "any prior infractions using the fork truck." In fact, Doane testified that to his knowledge, she had not received any such infractions.

The deputy commissioner concluded that the evidence did not prove that the claimant intentionally violated the "clear path" safety rule. He noted that he "observed the claimant carefully" as she testified. He "saw nothing in her expressions, mannerisms[,] or demeanor" causing him "to conclude that [the claimant's] testimony should not be entitled to evidentiary weight." The deputy commissioner further noted that the metal crate "remained in the same position" during the relevant time period and the claimant had "successfully avoided" the crate "with the fork truck on three prior trips through the area shortly before her accident." As a result, he reasoned that the evidence proved, at most, that she misjudged the distances, an act of negligence, and he entered an award of benefits.

The employer filed a request for review, arguing that the claimant gave testimony constituting a "glaring admission" that she knew she did not have a clear path. The Commission disagreed, noting that the claimant "consistently testified that she believed she had a clear path" during the relevant time frame. The Commission agreed with the deputy commissioner's assessment that "[t]he evidence as a whole d[id] not establish" that the claimant's hand injury

resulted from her "intentional action to violate the employer's safety rule to keep a clear path of travel" while using the fork truck. Accordingly, the Commission unanimously affirmed the award of benefits.

## II. ANALYSIS

The employer argues that the evidence proved that the claimant was injured because she violated a known safety rule. As a result, it contends that she is barred from receiving an award of workers' compensation benefits. The claimant suggests that the employer's argument on appeal is not grounded in fact and, consequently, that she is entitled not only to the award of workers' compensation benefits but also to statutory sanctions.

### A. Violation of a Known Safety Rule

As the appellant in this case, the employer bears the burden of showing that the Commission committed reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). Further, this Court defers to the Commission in its role as fact finder. Vital Link, Inc. v. Hope, 69 Va. App. 43, 53 (2018). On appellate review, factual findings are "'conclusive and binding'" if "supported by credible evidence." Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 350 (2015) (quoting Mills v. Va. Elec. & Power Co., 197 Va. 547, 551 (1955)). This principle applies "even [if] there is evidence in the record to support a contrary finding." City of Waynesboro v. Griffin, 51 Va. App. 308, 317 (2008) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279 (1986)). The appellate court simply does not "retry the facts, reweigh . . . the evidence, or make [its] own determination of the credibility of the witnesses." Layne, 64 Va. App. at 345 (quoting McKellar v. Northrop Grumman Shipbldg. Inc., 63 Va. App. 448, 451 (2014)); see Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381 (1987).

Code § 65.2-306(A) provides in pertinent part that an employee is not entitled to workers' compensation benefits for an injury that was "caused by" the employee's "willful

breach of any reasonable rule . . . adopted by the employer and brought, prior to the accident, to the knowledge of the employee." Code § 65.2-306(A)(5). The employer bears the burden of proving the elements of this defense. See Layne, 64 Va. App. at 349. Review of the Commission's decision on the willful breach defense presents a mixed question of law and fact. Mouhssine v. Crystal City Laundry, 62 Va. App. 65, 73 (2013). The appellate court "'view[s] the facts and all inferences . . . in the light most favorable' to . . the prevailing party below[] and . . . 'consider[s *de novo*] whether the [Commission] correctly applied the law'" to those facts. Id. (quoting Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897, 899 (1976)).

To prevail on the defense of the willful breach of a safety rule, the employer must prove that the rule was "reasonable," that it was "known to the employee," and that it was for the employee's benefit. Layne, 64 Va. App. at 349-50 (quoting Owens Brockway v. Easter, 20 Va. App. 268, 271 (1995)). The employer also must establish that "the employee intentionally undertook the forbidden act" and that the breach of the relevant rule proximately caused the injury. See id. at 350 (quoting Owens Brockway, 20 Va. App. at 271).

Here, the employer challenges only the Commission's conclusion that the evidence failed to prove that the claimant intentionally undertook the forbidden act.

To prove the intentional undertaking of a forbidden act, "[i]t is not necessary for the employer to show that the employee, having the rule in mind, determined to break it[. Instead,] it is enough to show that, knowing the rule, [s]he intentionally performed the forbidden act." Id. at 355 (emphasis omitted) (quoting Riverside & Dan River Cotton Mills, Inc. v. Thaxton, 161 Va. 863, 872 (1934)). However, negligence, even gross negligence, is inadequate to establish the defense. See id. at 359. The discrete issue of whether the claimant acted intentionally or merely negligently is a pure question of fact. Id. at 358-59. Consequently, in reviewing the

Commission's determination of this issue on appeal, we are bound by its conclusion if it is supported by credible evidence. See id. at 350.

The employer's argument revolves solely around the Commission's assessment of the claimant's credibility. It points to the claimant's admission that she knew that the metal crate on which she injured her hand was "in the wrong spot." The employer further relies on the claimant's explanation for why she started to move the fork truck despite the obstruction created by the improper placement of the metal crate. In response to the employer's question on that subject, the claimant replied that she moved the fork truck despite the presence of the metal crate because she had to load the position stands serving the machines on her line by "put[ting the necessary] material there." She further explained, "I have one machine empty that I can put that type of material on. I don't have an option to say, 'Oh, well, there's not going to be a clear path, I can't use [that machine today].'" The employer argues that this specific testimony clearly proves that the claimant had the "intent to perform the forbidden act of operating the fork truck" despite knowing that she did not have "a clear path of travel" over which to do so.

In determining the factual question of the credibility of the claimant, the Commission is entitled to consider her testimony "in its entirety and in context with all the other evidence before [it]." Olsten of Richmond v. Leftwich, 230 Va. 317, 321 (1985). If the testimony of the claimant, viewed as a whole, "does not unequivocally show that [her] case is without merit[,] or if reasonable [jurists] may differ as to its effect, 'the [fact finder] must be permitted to pass upon the testimony and the effect thereof, [along] with all the other evidence in the case.'" Id. at 320 (quoting Saunders v. Bulluck, 208 Va. 551, 553 (1968)).

Here, after giving the testimony upon which the employer relies, the claimant stated without equivocation that she in fact "*had* a clear path" immediately prior to the accident. (Emphasis added). The claimant emphasized that she moved the first and second pallets into

position "just fine." She further explained that as soon as she began to remove the fork truck from beneath the second pallet, she "s[aw that she] wasn't going to make [the turn successfully], [so she] stopped." Although the claimant took steps to engage the truck's emergency brake, "it kept coming" and crushed her hand between the truck's throttle handle and the metal crate. She acknowledged the safety rule requiring her to keep a clear path, but she noted that she "[did not] measure from point A to point B every time [she put] a bag in [position]." Further, Doane, the employer's safety expert, conceded that employees were required to gauge the safety of a particular path only visually and were not required to obtain measurements before maneuvering the fork truck in tight areas.

The deputy commissioner noted that he closely watched the claimant as she testified and, based on "her expressions, mannerisms[, and] demeanor," credited her testimony. The Commission also clearly accepted the claimant's testimony as credible, noting she "consistently testified that she believed she had a clear path at the time she began to pull back out after dropping the second bulk bag." The Commission was free to interpret the claimant's testimony as meaning not that she intentionally disregarded a known safety rule but, instead, that she had to do her job even if obstacles were in the way as long as working around those obstacles did not amount to a violation of the "clear path" rule. Thus, the claimant's testimony, viewed as a whole, supports the conclusion that her actions amounted to negligence at most, which does not preclude an award of benefits.

The Commission, on the record before it, was free to interpret the claimant's testimony as asserting that she believed she had a clear path immediately prior to the accident and, consequently, that the employer did not meet its burden of proving that the injury resulted from her intentional disregard of a known safety rule. See Va. Elec. & Power Co. v. Mabin, 203 Va. 490, 494 (1962) (holding that a "damaging statement made in one part of [a litigant's] testimony

must be considered in the light of an explanation of such statement made in [another] part" and that the fact finder generally "determine[s] whether it will accept such explanation" in light of "all the other evidence"), cited with approval in Olsten, 230 Va. at 320-21.

### B. Request for Sanctions

Code § 8.01-271.1 provides that the signature of a party or his attorney on a pleading "constitutes a certificate by him," "formed after reasonable inquiry," that the pleading "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Code § 8.01-271.1(A)-(B).[2] If a pleading violates the statute, the Court "shall impose upon the person who signed the [pleading] . . . , a represented party, or both, an appropriate sanction." Code § 8.01-271.1(D). That sanction "may include an order to pay the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading, . . . including reasonable attorney fees." Id. Whether a litigant could reasonably have believed that a pleading was well-grounded in fact and warranted by existing law is assessed under "an objective standard of reasonableness.'" Kambis v. Considine, 290 Va. 460, 466 (2015) (quoting Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 65-66 (2001)).

This statute is "designed to ensure dignity and decorum in the judicial process. [It] deters abuse . . . and fosters and promotes public confidence and respect for the rule of law." Taboada v. Daly Seven, Inc., 272 Va. 211, 216 (2006). "The possibility of a sanction can protect litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims . . . ." Gilmore v. Finn, 259 Va. 448, 466 (2000) (quoting Oxenham v. Johnson, 241 Va. 281, 286 (1991)).

---

[2] The statute also provides that an attorney's signature constitutes a certificate that the pleading "is not interposed for any improper purpose." Code § 8.01-271.1(B). The claimant does not suggest that the employer was motivated by an improper purpose.

Nevertheless, "[i]n resolving such an issue, the wisdom of hindsight should be avoided." Tullidge v. Bd. of Supers., 239 Va. 611, 614 (1990), quoted with approval in Flora v. Shulmister 262 Va. 215, 220 (2001). Simply because a litigant presents a weak case and does not prevail does not compel the conclusion that the pleading was not well-grounded in existing fact or warranted by existing law. See id. "[T]he threat of a sanction should not be used to stifle counsel in advancing novel legal theories or asserting a client's rights in a doubtful case." Shebelskie v. Brown, 287 Va. 18, 27 (2014) (quoting Gilmore, 259 Va. at 466). Accordingly, "any doubts" should be resolved in favor of the litigant against whom the sanction is sought. Cnty. of Prince William v. Rau, 239 Va. 616, 620 (1990). This approach is justified, in part, by the duty of an attorney to zealously represent his or her client. See generally Logan v. Commonwealth, 51 Va. App. 111, 114 n.3 (2008) (rejecting, due to the duty of zealous representation, the conclusion that counsel's "novel legal arguments" showed bad faith).

The claimant argues that the employer did not act in "good faith" by pursuing an appeal because it "cherry-picked a single phrase from an orchard of testimony" to assert that the claimant intentionally failed to follow the "clear path" safety rule. However, under Code § 8.01-271.1, an assertion not involving a request for the modification of existing law requires only that a litigant present an argument that is "well grounded in fact" and "warranted by existing law." Code § 8.01-271.1(B).

The instant case is not one in which the record is wholly devoid of evidence supporting the employer's argument. Cf. N. Va. Real Est., Inc. v. Martins, 283 Va. 86, 111-13 (2012) (holding that a defamation suit was not well-grounded in fact when *no* evidence proved the alleged defamatory statements). Here, the claimant herself gave some specific testimony that, *standing alone*, could, depending on interpretation, have supported a finding that she violated a known safety rule requiring her to keep a clear path. In response to the employer's question

- 11 -

regarding why she continued to work in the area with the improperly positioned metal crate, she replied that she had work to do and did not have the option to say, "Oh, well I'm not going to have a clear path. I'm not going to use that machine today."

The claimant concedes on brief that the testimony upon which the employer relies "could remotely be deemed to support [its] argument," although she asserts that the testimony "loses any modicum of support" when viewed "in context." Also supporting the facial validity of the employer's argument is the recognition of Virginia case law that in at least some circumstances, a litigant may rise no higher than her own testimony. See, e.g., Olsten, 230 Va. at 320 (noting the holding in Massie v. Firmstone, 134 Va. 450, 462 (1922), that "a litigant 'cannot be heard to ask that his case be made stronger than he makes it where . . . it depends upon facts within his own knowledge and as to which he has testified" but recognizing various "refine[ments]" in "the scope of the rule"). Although we conclude that the Commission's decision is not erroneous, the record, viewed under a standard of objective reasonableness, does not establish the complete absence of a factual basis for challenging the sufficiency of the evidence on this ground. To the contrary, the employer's argument falls within the scope of the zealous representation of one's client. Consequently, we deny the claimant's request for the imposition of sanctions including an award of attorney's fees.

### III. CONCLUSION

On this record, we conclude that the evidence supports the Commission's decision that the employer failed to prove the claimant's injury resulted from her intentional violation of a known safety rule. Additionally, we hold that the employer's assignments of error were adequately based in fact and law. Therefore, we affirm the award of benefits and deny the claimant's request for sanctions.

Affirmed.