# Richmond

## VIRGINIA ELECTRIC AND POWER COMPANY

## V.

## MICHAEL FRANK KREMPOSKY

Record No. 830202.

April 27, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and Gordon, Retired Justice.

*J. Kennerly Davis, Jr.*, for appellant.

*Richard E. Trodden (Ashcraft & Gerel*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Virginia Electric and Power Company (Vepco), appealing from a workers' compensation award in favor of claimant Michael F. Kremposky, contends that the Industrial Commission erred in holding that it had failed to establish its defense of willful violation of a known safety rule.

An employer who invokes such a defense has the burden of proving that the claimant's injury was "[d]ue to willful failure or refusal to use a safety appliance . . . or the willful breach of any rule or regulation adopted by the employer and approved by the Industrial Commission and brought prior to the accident to the knowledge of the employee." Code § 65.1-38.

The industrial accident occurred May 3, 1982. Claimant, a network lineman, was attempting to clean a "bus", one of the electrical conductors on an underground network protector, an automatic switching device located on the lower side of a transformer. A strand of the steel wool claimant was using to clean one bus contacted another conductor, created an arc, and caused an explosion in which the claimant was severely injured.

Kremposky had been a Vepco employee for 18 years and, for the last eight months, had been working on energized network protectors. When he was first employed in 1964, Vepco gave him a copy of its "Accident Prevention Manual" for which he signed a "Receipt" stating: "I further certify that I will study and familiarize myself with the rules and regulations outlined in the Manual that pertain to my work".* When he needed replacement copies of the manual, he returned his old copy and signed a new receipt containing the same pledge. Vepco supplies its supervisors with supplemental material used in weekly safety meetings. In addition, safety personnel conduct periodic "general safety meetings",

---

*The rule pertinent to this appeal provided:

Rubber or composition protective equipment . . . shall be used to protect employees when performing work on or near energized electrical conductors and equipment. . . .

. . . .

This equipment shall be placed so as to adequately cover all energized conductors or equipment . . . within the working zone or within reaching distance.

and each employee is required to attend at least three such meetings a year.

Kremposky testified that, before he began the cleaning operation, he removed the "insulative protective boards" separating the buses and put on a glove "[b]ecause it was energized." He explained that he had performed this task before and had found "it was quite difficult to clean" the bus with the insulator in place. Asked if he could have used the rubber blanket, Kremposky replied, "I don't even think I gave it a thought of using a rubber blanket in my haste of trying to get the job done."

Carlton Utterback, Vepco's safety director, talked with the claimant in the hospital. Utterback testified that "he just told us that he had messed up and the fact that he did not use the necessary protective equipment to protect himself". Wesley Childs, the claimant's foreman, also talked with him after the accident. Childs said that Kremposky "made mention that it was dangerous and you have to be careful when you do this" and "[h]e did mention that he had made a mistake." Childs told him he should have used "a rubber blanket or barrier to protect himself", and Kremposky responded that he "realized that was true."

Utterback was asked to describe Vepco's policy and practice concerning safety rule violations. He testified that safety supervisors prepare field reports of "unsafe observations" and submit them to the district manager. The district manager transmits the reports to the department head and to the employee's supervisor and recommends what action should be taken. Utterback reviews disposition of "every case" in order "to make sure that we do take appropriate action on violations of safety rules." Violations "are dealt with," he said, "either in counseling, orally or written, possibly a reprimand and there could even be suspension."

Kremposky and two of his co-workers testified that they had observed fellow employees working on energized buses without installing rubber blankets and that they had never known anyone to be disciplined for such violations.

The hearing commissioner found that Vepco's rules "were adopted for the safety of the employees and were brought to the attention of the employees through thrice yearly safety meetings" but that "the network linemen frequently violated the rule without disciplinary action by the employer" and, hence, that "compensation is not barred." In a split decision, the full Commission ruled that the evidence "fails to preponderate in establishing that claim-

ant had direct knowledge of the rule or, and more importantly, that it was strictly enforced" and confirmed an award in favor of Kremposky.

■ On appeal, the Commission's findings of fact are "conclusive and binding", Code § 65.1-98, but when there is "no conflict in the evidence, the question of the sufficiency thereof is one of law", *City of Norfolk* v. *Bennett*, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965), and the same is true when there is no credible evidence to support the Commission's factual findings, *Conner* v. *Bragg*, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962). *Accord Eccon Company* v. *Lucas*, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981); *Goodyear* v. *Watson*, 219 Va. 830, 833, 252 S.E.2d 310, 312 (1979).

■ We consider first whether the evidence was sufficient to show, as Code § 65.1-38 requires, that the safety rule was "brought prior to the accident to the knowledge of the employee". The majority of the Commission found the evidence insufficient to support Vepco's allegation. In defense of that finding, the claimant argues that, even if the evidence was sufficient to show "constructive knowledge", the defense fails because the statute "requires actual knowledge of a rule to constitute a willful violation."

Kremposky relies upon *King* v. *Empire Collieries Co.*, 148 Va. 585, 139 S.E. 478 (1927), where the employer invoked a willful-violation defense, relying upon the legal fiction that everyone is presumed to know the law. Construing a predecessor to Code § 65.1-38, we held that this presumption "was excluded from the operation of section 14 by the use of the word 'wilful' immediately preceding 'failure or refusal' " and that, standing alone, proof of an employee's violation of a penal statute does not bar compensation. *Id.* at 592, 139 S.E. at 480. Explicating our holding, we said that the evidence is sufficient to establish the defense if "the employer can show that [the employee] had knowledge of the statute, or that reasonable steps had been taken to bring home to him notice of its existence." *Id.*

Kremposky's reliance on *King* is misplaced; he overlooks the distinction we drew between knowledge implied in law and knowledge implied in fact. Knowledge can be shown, and often can only be shown, by proof of facts and circumstances which negate a claim of ignorance. When there is no proof of ignorance, the only question is whether knowledge is reasonably implied by the facts in evidence.

Here, there was no proof of ignorance. Indeed, there was no *claim* of ignorance. Although Kremposky had ample opportunity to deny Vepco's allegation that he had prior knowledge of the safety rule, he never asserted that the accident occurred because he was unaware of the rule. Rather, he explained that he had found it difficult to clean the conductors with an insulator in place and that he had not given a thought to using the rubber blanket. Vepco's witnesses testified that, following the accident, Kremposky acknowledged that he had "messed up" by not using "the necessary protective equipment", that he had "made a mistake", and that he "realized" he should have used the rubber blanket prescribed by the safety rule. In the face of that testimony, the burden of going forward with the evidence shifted to the claimant. Yet, Kremposky, testifying in rebuttal, made no claim that he was unaware of the rule at the time of the accident.

We conclude that this was because the evidence of knowledge left no room for a claim of ignorance. Vepco furnished Kremposky with a copy of the safety manual and required him to sign a pledge to familiarize himself with all rules pertaining to work around energized equipment. During the 18 years Kremposky engaged in such work, Vepco supervisors conducted weekly safety meetings and, as the hearing commissioner found, safety rules "were brought to the attention of the employees through thrice yearly safety meetings."

We believe these were "reasonable steps" within the meaning of our opinion in *King*, and we hold that the evidence was sufficient to show that Kremposky had prior knowledge of the safety rule within the intendment of Code § 65.1-38.

■ We turn now to the question whether, as the majority of the Commission ruled, the evidence "fails to preponderate in establishing that . . . the rule . . . was strictly enforced." That ruling is not binding on appeal, because this is a mixed question of law and fact. *Iron Company* v. *Jenkins*, 207 Va. 399, 403, 150 S.E.2d 120, 123 (1966).

■ In *Iron Company*, "[t]he dominant question presented . . . [was] whether claimant's employer strictly enforced the oral work rule". *Id.* at 402, 150 S.E.2d at 123. Reversing the commission's holding, we found the evidence sufficient to support the employer's defense. We reaffirm the principles underlying our decision in that case. Proof of a pattern or practice of failing to discipline employees guilty of willful violations of a safety rule defeats the defense

afforded an employer by Code § 65.1-38, but only when such violations occur " 'under circumstances charging the employer with knowledge and acquiescence.' " *Iron Company* at 404, 150 S.E.2d at 124 (quoting from 1 Larson, *Workmen's Compensation Law* § 33.30 at 485). By definition, acquiescence presupposes knowledge.

The majority based its ruling upon the single finding that "two linemen . . . both testified that co-workers had been observed violating the rule without being reprimanded." But, as the dissenting commissioner noted, "there is absolutely no evidence in this record to show that anyone in a supervisory capacity representing the employer was aware of said violation[s]." Hence, there is no proof of a pattern or practice of non-enforcement.

On the other hand, Utterback's unchallenged testimony was that every rule violation which came to the attention of enforcement personnel was "dealt with" by "counseling", "reprimand", or "suspension". We hold, therefore, that the majority of the Commission erred in ruling that the evidence was insufficient to support the defense Vepco invoked, and we will reverse the award and dismiss the claim.

*Reversed and dismissed.*