PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, McCullough and Senior Judge Clements
Argued at Alexandria, Virginia

ABDELHADI MOUHSSINE

v.      Record No. 1633-12-4

CRYSTAL CITY LAUNDRY AND
 NEW HAMPSHIRE INSURANCE COMPANY

OPINION BY
JUDGE RANDOLPH A. BEALES
MAY 14, 2013

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Zeeshan M. Elahi (The Law Offices of Zeeshan M. Elahi, LLC, on
> brief), for appellant.
>
> John C. Duncan, III (Duncan and Hopkins, P.C., on brief), for
> appellees.

Abdelhadi Mouhssine (claimant) appeals the unanimous decision of the Virginia

Workers' Compensation Commission (the commission) denying his claim for benefits based

upon its finding that claimant willfully breached a workplace safety rule requiring claimant to

wear a back brace. See Code § 65.2-306(A)(5). On appeal, claimant argues that the

commission's finding was erroneous because he claims that his employer, Crystal City Laundry

(employer), failed to enforce its back brace safety rule. Claimant also argues that the

commission erred when it did not find that he remained totally disabled from employment. For

the following reasons, we affirm the judgment of the commission.

I. BACKGROUND

The evidence below establishes that claimant was a laundry attendant for employer and

had worked in that capacity since 2004. Claimant injured his back at work on April 27, 2009.

Claimant's injury occurred while he was picking up dirty towels from a laundry cart and placing

those towels in an industrial washing machine.  Claimant filed a claim for benefits in the commission seeking temporary total disability benefits from April 27, 2009 and continuing (while reserving a claim for permanent total disability benefits).  In response, employer filed a "Notice of Willful Misconduct/Violation of Employer's Safety Rules" pursuant to Commission Rule 1.10, alleging that claimant had breached a workplace safety rule requiring him to wear a back brace.  Claimant has never contended that he was wearing a back brace when he was injured on April 27, 2009.

At the evidentiary hearing in the commission, the deputy commissioner heard testimony from Mark Edelin (claimant's direct supervisor) and Lois Green (employer's general manager at the time of claimant's injury) describing the task claimant was performing at the time of his injury on April 27, 2009.  Edelin testified that claimant's injury occurred in what he described as the "washroom," "back area" or "loading area" of the premises and that two employees were required for the task.  Edelin explained that one employee would "help arrange carts or move empty carts while the other one's loading."  At the time of his injury, claimant was the employee loading towels into employer's industrial washing machine.  Green testified that the washing machine is not "a regular washer, it's a tunnel washer."  Green explained that, since the process of lifting towels and loading them in the tunnel washer involves heavy lifting and a lot of "repetitive movement," wearing a back brace is necessary for performing that task because the brace "holds you real tight" and reduces the risk of a back injury.  Similarly, Edelin testified that employees who unload dirty towels from the carts and load the tunnel washer need to wear a back brace because that task involves "repetitious lifting" of significant weight.  Edelin testified, "When you're working that station, loading . . . the wash[ing] machine, you're supposed to be wearing a back brace."

For purposes of this appeal, there is no dispute that claimant was required to wear a back brace when his injury occurred on April 27, 2009. At the evidentiary hearing, claimant acknowledged signing employer's "Mid-Atlantic Regional Laundry Back Brace and Safety Shoe Policy" ("written policy") on November 3, 2004.[1] While claimant indicated that he did not believe that the written policy applied because he was not loading or unloading a linen delivery truck when he was injured on April 27, 2009, claimant also acknowledged on cross-examination that his supervisors gave verbal instructions requiring him and other laundry employees to wear a back brace while doing heavy lifting. Furthermore, Edelin and Green both testified that laundry employees were regularly instructed during department "standup meetings" to wear a back brace while performing tasks that involved heavy lifting – such as loading and unloading the laundry carts.

According to Edelin, the following safety rule is communicated to the employees verbally during regular "standup meetings" in his department: "It's *part of your uniform* and if you're . . . moving carts or *working in the washroom area* or working on the truck [it] is *required* to have your back brace on at all times." (Emphasis added). Edelin testified that this back brace rule is communicated to laundry employees "several times a month" and that claimant was

---

[1] The written policy, which claimant signed, stated, in pertinent part:

> "SCOPE: The policy will apply to all Laundry associates."

> "GENERAL: All drivers and driver's helper and any other associates that load the linen on and off the trucks must wear a back brace and safety shoe."

> "FAILURE TO DO SO WILL RESULT IN: (1) Verbal Warning (2) First Written Warning (3) Second Written warning with Day of Decision (4) Third Written warning with recommendation for termination."

Claimant signed the written policy again on May 1, 2009 – after the workplace injury that is the subject of this appeal occurred.

required to attend (and did, in fact, attend) those regular meetings. Neither Edelin nor Green (who was present at many such meetings) had any doubt that claimant was aware of the back brace rule, as that rule was communicated at the department's "standup meetings" that claimant attended.

Claimant testified that the back brace rule was only sometimes mentioned by supervisors at department meetings and that he saw other laundry employees not wearing a back brace while lifting heavy objects. Claimant testified that he sometimes wore a back brace while loading the washing machine and sometimes did not. However, neither Edelin nor Green – whom the deputy commissioner found were more credible witnesses than claimant – testified that they ever permitted their employees to perform this task without wearing a back brace. Edelin testified that he occasionally performs this specific task himself and that he wears a back brace when doing so because it is "company policy."

Edelin testified that he observed claimant not wearing (or not properly wearing) a back brace four to six times. Edelin testified that claimant – whom Edelin described as "a role model worker" – was not given a written warning or threatened with termination on any of those occasions. Edelin explained that, on those four to six occasions, he instead gave claimant a verbal directive to put on or properly secure a back brace. On one such occasion, Edelin even loaned claimant his own back brace. Edelin testified that claimant always complied with Edelin's verbal directives to wear or secure a back brace.

Following the evidentiary hearing, the deputy commissioner issued a written opinion finding that employer proved its defense that claimant willfully disregarded a workplace safety rule and that compensability was barred under Code § 65.2-306(A)(5). Noting that it engaged in further analysis only "[f]or the sake of completeness," the deputy commissioner also found that claimant was totally disabled from work from May 22, 2009 through March 3, 2011. Claimant

requested full commission review of the deputy commissioner's finding that he willfully disregarded a workplace safety rule. However, neither party requested full commission review of the deputy commissioner's finding concerning the duration of claimant's total disability. Therefore, as the commission noted in its review opinion, that particular finding became final and was not considered by the commission on review. Claimant never moved for reconsideration of that issue.

In its review opinion the commission unanimously affirmed the conclusion reached by the deputy commissioner, finding:

> [T]he claimant contends that the employer's written policy was the best evidence of the back brace rule, and that the employer's policy did not require the claimant to wear a back brace to load the linen from the cart to the washing machine. The claimant also argues that the policy was not kept alive through *bona fide* enforcement. We disagree.
>
> The Deputy Commissioner credited the testimony of the employer's witnesses, and we decline to reverse those credibility determinations. We find that the employer had a written policy which required employees who were loading linens on and off the truck to use a back brace. We further find that the claimant knew he was required to wear the back brace when lifting heavy towels as well and that *the employer proved that this rule was enforced by correcting employees and telling them to wear the brace.*

(Emphasis added).

## II. ANALYSIS

### A. WILLFUL BREACH OF A WORKPLACE SAFETY RULE

In his first assignment of error on appeal, claimant challenges the commission's conclusion that the provisions of Code § 65.2-306(A) bar his claim. That statute states, in pertinent part:

> No compensation shall be awarded to the employee or his dependents for an injury or death caused by:

> 1. The employee's willful misconduct or intentional self-inflicted injury;
>
> *    *    *    *    *    *    *
>
> 5. *The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . .*

Code § 65.2-306(A) (emphasis added).

## 1. SCOPE OF CLAIMANT'S ARGUMENT PERTAINING TO THIS ASSIGNMENT OF ERROR

Claimant alleges in his first assignment of error that the commission erred "in finding that [his] claim is barred by willful misconduct" under Code § 65.2-306(A)(5)[2] because the commission "failed to consider case precedent . . . which would rebut *bona fide* enforcement of safety rules." On brief and during oral argument in this Court, claimant's appellate counsel has clarified that the scope of this first assignment of error does not pertain to the commission's finding that employer proved the statutory elements of the defense available under Code § 65.2-306(A)(5) – but instead *only* challenges the commission's finding that employer's back brace rule was "kept alive through *bona fide* enforcement." See, e.g., Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993).

While the Virginia Workers' Compensation Act (the Act) has never actually included any such language in its statutory text, Virginia's case law addressing the defense afforded to employers under Code § 65.2-306(A)(5) (and its statutory predecessors) has included consideration of whether there was "strict enforcement" or "*bona fide* enforcement" of the applicable workplace safety rules since at least 1943. See Williams v. Benedict Coal Corp., 181

---

[2] Although the commission's opinion in this case generally described the statutory defense under Code § 65.2-306 as "willful misconduct," the commission actually concluded, under the circumstances of this case, that employer satisfied the elements of the specific defense set forth in subsection (A)(5) – i.e., a "willful breach" by claimant of a "reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge" of claimant. Code § 65.2-306(A)(5).

Va. 478, 482, 25 S.E.2d 251, 253 (1943) (citing West Virginia case law); see also, e.g., Buzzo, 17 Va. App. at 332, 437 S.E.2d at 208. In Peanut City Iron & Metal Co, Inc v. Jenkins, 207 Va. 399, 150 S.E.2d 120 (1966), the Supreme Court of Virginia thoroughly discussed the rationale for this line of analysis, explaining:

> The statutory defense of wilful disobedience of safety rules or wilful failure to use a safety device will succeed only if the employee is given actual (as distinguished from constructive) notice of the rule and an understanding of the danger involved in its violation, if the rule is kept alive by *bona fide* enforcement, and if the employee had no valid excuse for the violation.
>
> \* \* \* \* \* \* \*
>
> The most frequent ground for rejecting violation of rules as a defense, whether under the safety rule or wilful misconduct defense, is lack of enforcement of the rule in practice. *Habitual disregard of the rule has been made the basis of rejecting the defense.*

Jenkins, 207 Va. at 404, 150 S.E.2d at 124 (internal quotation marks, alterations, and treatise citation omitted) (emphasis added).

Claimant's argument on appeal presents a mixed question of law and fact. See Virginia Electric & Power Co. v. Kremposky, 227 Va. 265, 271, 315 S.E.2d 231, 235 (1984); Jenkins, 207 Va. at 403, 150 S.E.2d at 123; Gwaltney of Smithfield, Ltd. v. Hagins, 32 Va. App. 386, 393, 528 S.E.2d 162, 165-66 (2000). Under settled principles of appellate review, "we view the facts and all inferences reasonably deducible therefrom in the light most favorable" to employer, since it was the prevailing party below, and we "consider whether the [commission] correctly applied the law thereto." Bassett Furn. Indus., Inc. v. McReynolds, 216 Va. 897, 899, 224 S.E.2d 323, 324 (1976); see also Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d 431, 433 (2008). Furthermore, this Court "must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010).

## 2. PUNISHMENT OR PENALTY NOT REQUIRED AS A MATTER OF LAW

On brief, claimant argues that "[t]he safety rules advocated and endorsed by [employer] through the terms" of the written policy "were not enforced." Appellant's Br. at 9-10. In support of this argument, claimant references Edelin's testimony that he observed claimant not wearing a back brace (or without one properly secured) on four to six occasions. If the disciplinary terms of the written policy had been rigidly applied in his case, claimant notes, he would have been issued multiple written warnings and would have faced "recommendation for termination" upon a fourth violation of the written policy.[3] Edelin testified that claimant was never given a written warning. Instead, Edelin testified that he would give claimant verbal instructions to wear a back brace (and he testified that claimant always complied with those instructions). According to claimant, this evidence "is an explicit example of how the safety rules at the Crystal City Laundry were not kept alive by *bona fide* enforcement." Appellant's Br. at 11.

However, the Supreme Court's decision in <u>Jenkins</u> makes clear that the purpose of the enforcement of workplace safety rules analysis is to consider the employer's efforts to achieve its employees' *compliance* with the workplace safety rule – not necessarily to focus on any specific

---

[3] During oral argument before this Court, employer's counsel asserted that there were actually *two* back brace rules – i.e., the back brace rule contained in the written policy *and* a second back brace rule verbally communicated to laundry department employees at the "standup meetings." Employer's counsel claimed that claimant violated the second, verbal back brace rule. Thus, employer's counsel argued that the specific penalties listed in the written policy for first, second, third, and fourth violations of the written policy were irrelevant. However, we need not address this assertion by employer. Claimant never argued in the commission that, in the context of this case, employer was *bound* by the specific order or progression of the disciplinary sanctions listed in the written policy. <u>See</u> Rule 5A:18. In other words, claimant never took the position in the commission that "strict enforcement" of the back brace rule required employer to issue multiple written warnings or to fire him upon a fourth violation of the rule because that was what the penalty provision of the written policy demanded. Instead, claimant's observation in his written statement seeking full commission review that "no written violations were ever recorded" was made in the context of his broader contention that the back brace rule was "violated without consequence."

*punishment* given to a particular employee who has failed to comply. See 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 35.03 ("[E]nforcement is not necessarily synonymous with application of outright penalties." (citing Jenkins)). In this context, "strict enforcement" does not necessarily mean "harsh enforcement." Indeed, in Jenkins, the Supreme Court held that the commission erred as a matter of law when it found that "the work rule was not strictly enforced because *no punishment or penalty was assessed against claimant* for his known violations of it." Jenkins, 207 Va. at 403, 150 S.E.2d at 123 (emphasis added).

There, Jenkins worked for a company that salvaged junk cars, and this company instructed its employees "that before an automobile was dismantled with a blow torch air holes were to be made" by puncturing the gas tank with an axe or pick. Id. at 400, 150 S.E.2d at 121. This puncture rule was "preached" to Jenkins and other workers because "punctured gas tanks merely burn and do not explode." Id. Even though Jenkins was aware of the puncture rule, the company's president observed Jenkins on several occasions begin dismantling vehicles without having made the required puncture holes. Id. On each occasion, the president would require Jenkins to make the correct puncture holes before proceeding – but the president "did not dock [Jenkins'] salary or suspend him from work" (and there is no mention of any written reprimands). Id. at 400, 150 S.E.2d at 121-22. Following Jenkins' injury (which occurred while he was again violating the puncture rule), the commission found that the employer's proof of the defense that Jenkins willfully breached the puncture rule was "negated and rendered inapplicable as a defense herein in that evidence of repeated known violations by this employee in the past were *without punishment or penalty of any kind except oral reprimand*" by the employer. Id. at 402, 150 S.E.2d at 122-23 (emphasis added).

It was in this context that the Supreme Court, however, reversed the commission and held that the issue of whether a workplace safety rule was strictly enforced by the employer is a

mixed question of law and fact. Id. at 403, 150 S.E.2d at 123. The Supreme Court then held that the commission misapplied the law by focusing on the lack of any "punishment or penalty [that] was assessed against claimant for his known violations of it." Id. The Supreme Court instead referenced decisions from other states that considered whether "the employer connived at and waived the violation" of its workplace safety rule or "virtually abrogated the rule by failing to enforce it." Id. at 405, 150 S.E.2d at 124 (citing Ragle v. State Comp. Comm'r, 24 S.E.2d 756, 758 (W. Va. 1943); Great Western Power Co. v. Pillsbury, 149 P. 35, 40 (Cal. 1915)). At the heart of the matter, the Supreme Court concluded in Jenkins, there was "a conscientious, *bona fide* effort on behalf of the employer to require claimant and the other employees to fully comply with the rule at all times." Jenkins, 207 Va. at 406, 150 S.E.2d at 125.

In light of these principles, the commission did not err in this case when it found that "employer proved that [its back brace] rule was enforced by *correcting employees* and telling them to wear the brace." (Emphasis added). Acting as factfinder, the commission could reasonably conclude that employer made a *bona fide* effort to require claimant and its other laundry employees to comply with the back brace rule.[4] Credible evidence supports the same conclusion that the Supreme Court reached in Jenkins – that "employer's work rule had not fallen into disuse; it was not so treated by employer as not to be controlling upon the employees, and employer had not condoned or acquiesced in its violation." Id. Under Jenkins, the fact that claimant was never issued a formal penalty by Edelin (his direct supervisor) or by any other supervisor simply does not control the outcome of this case as a matter of law.

<hr/>

[4] Claimant's heavy reliance on language from two prior commission opinions, Pellerin v. Hematology & Oncology Assoc., Ltd., No. 129-69-65 (Va. Workers' Comp. Comm'n May 8, 1987), and Carrigan v. Cablevision Indus., Inc., No. 146-16-83 (Va. Workers' Comp. Comm'n Aug. 23, 1991), is misplaced. See Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 242 n.1, 734 S.E.2d 683, 690 n.1 (2012) (stating that "decisions of the commission are not binding on this Court," although "they may be persuasive in some cases"). Here, claimant relies on language from the commission's Pellerin and Carrigan decisions that was clearly *dicta* in both cases and that, therefore, cannot be considered even potentially persuasive to the analysis of this case.

### 3. THREAT OF TERMINATION ALSO NOT REQUIRED HERE

Claimant's appellate counsel noted during oral argument before this Court that, in Jenkins, the company's president also threatened to fire Jenkins on the last occasion he observed Jenkins violate the puncture rule. See Jenkins, 207 Va. at 401, 150 S.E.2d at 122. However, the presence of a threat of termination from employment does not render Jenkins distinguishable from this case. Indeed, the Supreme Court's analysis in Jenkins makes clear that the threat to terminate Jenkins' employment was not in itself the deciding factor in that case. Instead, the Supreme Court in Jenkins held that *several* "uncontradicted circumstances were sufficient to show that the safety rule was strictly enforced by claimant's employer" because those circumstances "indicated a conscientious, *bona fide* effort on behalf of the employer to require claimant and the other employees to fully comply with the rule at all times." Id. at 406, 150 S.E.2d at 125.

Here, the evidence establishes that claimant was never threatened with termination for violating the back brace rule – but the evidence *also* establishes that claimant was otherwise a model employee. To be sure, nothing in the Jenkins opinion indicates that Jenkins was a model employee.[5] On appeal in this matter, employer's counsel asserts that employer's efforts to ensure claimant's compliance with the back brace rule should be viewed in light of the testimony by Edelin (claimant's direct supervisor) that claimant was "a role model worker" – and we agree with this common sense assertion. Prior to claimant's injury that occurred on April 27, 2009, the evidence establishes that claimant was observed by his supervisors violating the back brace rule

---

[5] It bears repeating that Jenkins willfully and repeatedly disregarded a safety rule that existed to prevent *explosions*. Thus, Jenkins' continued refusals to abide by the puncture rule posed a significant danger to him *and to others*. Furthermore, the company's president plainly advised Jenkins several times of this danger. The risk that Jenkins posed to himself and to others from his repeated disregard of this safety rule – despite repeated directives to follow the safety rule – presumably was a significant reason behind the president's decision to threaten to fire Jenkins. Unlike in Jenkins, no evidence in this case suggests that claimant's willful disregard of the back brace rule posed a danger to anyone but himself.

approximately four to six times over the approximately five years that claimant worked as a laundry attendant, according to Edelin's testimony.[6] Claimant had been employed as a laundry attendant since 2004. In addition to the regular instruction concerning the back brace rule (and other workplace safety rules) that claimant received at the department's "standup meetings," Edelin verbally instructed claimant to wear a back brace properly on the four to six occasions that he observed claimant in violation of the back brace rule. Edelin testified that claimant had always complied with those verbal instructions. Simply put, employer (primarily through Edelin, claimant's supervisor) exercised its discretion in choosing the appropriate methods to get claimant to comply with the back brace safety rule, and those methods generally worked.

"While the provisions of [the Act] are to be liberally construed in favor of the [employee]," that principle "does not go to the extent of requiring that every claim asserted should be allowed." Humphries v. Newport News Shipbuilding & Dry Dock Co., 183 Va. 466, 479, 32 S.E.2d 689, 695 (1945). Certainly, neither Jenkins nor any other Virginia appellate decision even hints that an employer must face the unenviable decision of either (1) taking the potentially disruptive step of threatening to fire a valuable and even (otherwise) excellent employee, or else (2) facing workers' compensation liability if that employee later suffers an

---

[6] Green's testimony also establishes one additional violation of the back brace rule by claimant – but the record does not demonstrate that Green (or Edelin) observed that violation. Green testified that, a few days before claimant's injury occurred, an executive from the corporate office saw that claimant was not wearing a back brace when he should have been wearing one. However, Green specifically testified that she "*wasn't back there when it happened*," adding that she knew that claimant "had his back brace that morning" before the incident occurred. (Emphasis added). Thus, viewing the evidence in the light most favorable to employer (as the prevailing party below), the record fails to show "that *anyone in a supervisory capacity* representing the employer was aware" of this specific violation of the back brace rule at the time it occurred. Kremposky, 227 Va. at 271, 315 S.E.2d at 234 (internal quotation marks omitted) (emphasis added). Furthermore, although claimant was not personally reprimanded after this incident, Green testified that on the "very next day . . . we had another meeting and said, 'You must wear your back braces, you must [wear] them.'" This testimony provided further evidence supporting the commission's finding that employer enforced the back brace rule in this case through corrective instructions.

injury while willfully disregarding a safety rule. Indeed, such a holding would violate all common sense and would directly contradict the very purpose of the statutory defense that is found in Code § 65.2-306(A)(5).

As the Supreme Court has explained, "'If an employee with years of experience is to be allowed to recover compensation on account of an injury due directly to his disregard of an absolutely fundamental measure of safety, which he admits he well knew, then there would be no case in which the provisions of [what is now Code § 65.2-306(A)(5)] would apply.'" Jenkins, 207 Va. at 403-04, 150 S.E.2d at 123-24 (quoting Mills v. Virginia Elec. & Power Co., 197 Va. 547, 552, 90 S.E.2d 124, 127 (1955)). Here, employer's proof of the statutory elements of its Code § 65.2-306(A)(5) defense pertaining to the back brace rule is unchallenged on appeal. Credible evidence also supports the conclusion that employer did not exhibit "[h]abitual disregard of the [back brace] rule" or "lack of enforcement of the rule in practice." Jenkins, 207 Va. at 404, 150 S.E.2d at 124 (internal quotation marks and citation omitted). According to Jenkins, those are the very considerations underlying the reason for the enforcement analysis in the first place.

4. VIOLATIONS OF THE BACK BRACE RULE DID NOT OCCUR WITH EMPLOYER'S ACQUIESCENCE

The Supreme Court in Jenkins provided several descriptions of circumstances that would indicate that a workplace safety rule has *not* been strictly enforced – i.e., if the employer had "connived at and waived the violation" of its rule; if the employer had "abandoned the rule[]"; if the employer had "virtually abrogated the rule by failing to enforce it"; if the rule had "fallen into disuse"; if the employer had treated the rule "as not to be controlling upon the employees"; and if the employer had "condoned or acquiesced in its violation." Id. at 405-06, 150 S.E.2d at 124-25. In Kremposky, the Supreme Court then "reaffirm[ed] the principles underlying [the] decision" in Jenkins – holding, "Proof of a pattern or practice of failing to discipline employees

- 13 -

guilty of willful violations of a safety rule defeats the defense afforded an employer by [then-]Code § 65.1-38, *but only when such violations occur 'under circumstances charging the employer with knowledge <u>and acquiescence</u>.'"* <u>Kremposky</u>, 227 Va. at 270-71, 315 S.E.2d at 234 (quoting <u>Jenkins</u>, 207 Va. at 404, 150 S.E.2d at 124) (emphasis added).

Following the principles stated in <u>Jenkins</u> and <u>Kremposky</u>, this Court in <u>Hagins</u> held that the applicable workplace safety rule was not strictly enforced because violations of the rule occurred *with* the employer's knowledge and acquiescence. <u>Hagins</u>, 32 Va. App. at 394, 528 S.E.2d at 166. In that case, Hagins' crew leader trained her in a manner that explicitly violated the employer's safety rule. The crew leader was also seen committing violations of that safety rule – and even admitted in his commission testimony that he sometimes violated that safety rule. <u>Id.</u> at 389-91, 528 S.E.2d at 164-65. Based on this evidence, this Court agreed with the commission's finding that the crew leader's own actions and awareness "that employees sometimes took short cuts proves that someone in a supervisory capacity representing the employer was aware that the safety rule was being violated." <u>Id.</u> at 394, 528 S.E.2d at 166.

The circumstances of this case, however, are very different from those in <u>Hagins</u>. Here, the evidence establishes that the laundry department supervisors regularly directed claimant and the other employees at the "standup meetings" to wear back braces when doing heavy lifting or when working in the washroom. Furthermore, Edelin, claimant's direct supervisor, testified that he personally instructed claimant to wear a back brace whenever he observed claimant violating the back brace rule. On one such occasion, Edelin testified that he even loaned claimant his own back brace to use. Moreover, Edelin testified that *he* wore a back brace whenever he loaded the tunnel washer with dirty towels. Therefore, the commission's record in this case establishes that Edelin not only gave claimant corrective instructions designed to ensure claimant's compliance

with the back brace rule – but the record also establishes that Edelin (unlike the crew leader in Hagins) even modeled proper safety procedures to his employees.

Here, claimant was a valuable employee, and Edelin, as supervisor, handled claimant's four to six violations of the back brace rule (over what was apparently a significant period of time) in the manner that Edelin and employer obviously felt was best. The commission's role in this case was limited to determining whether there was "a conscientious, *bona fide* effort on behalf of the employer to require claimant and the other employees to fully comply with the [back brace] rule at all times." Jenkins, 207 Va. at 406, 150 S.E.2d at 125. On this record, credible evidence supported the commission's finding that the employer made that *bona fide* effort in this case.

## B. DURATION OF TOTAL DISABILITY

In his second assignment of error, claimant argues that he remains totally disabled. Thus, he argues that the commission erred in finding that his duration of total disability ended on March 3, 2011. However, this finding was made by the *deputy commissioner*. As the full commission observed in its review opinion, neither party sought review of the deputy commissioner's finding that claimant was totally disabled from May 22, 2009 through March 3, 2011. The commission found that this finding by the deputy commissioner was final, and claimant did not seek reconsideration of that issue in the full commission.[7] See Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) (explaining that motions for a rehearing or for reconsideration "are not uncommon, and the Commission may vacate the original decision pending consideration of such a motion"). Thus, the commission never actually made a finding concerning the duration of claimant's total disability.

---

[7] We note that claimant's appellate counsel was not the attorney who represented claimant during the commission proceedings.

"As a result, on appeal to this Court, we have no commission ruling to review on the issue" of the duration of claimant's total disability. Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253, 708 S.E.2d 429, 434 (2011). Accordingly, appellate review of claimant's second assignment of error is barred by Rule 5A:18. See Williams, 266 Va. at 411-12, 587 S.E.2d at 548; Hodnett, 58 Va. App. at 253, 708 S.E.2d at 434. Furthermore, claimant has not asked this Court to invoke the good cause or ends of justice exceptions to Rule 5A:18 to permit appellate review of this assignment of error, "and we decline to do so *sua sponte*." Hampton Inn & Selective Ins. Co. of Am. v. King, 58 Va. App. 286, 301, 708 S.E.2d 450, 457 (2011).

### III. CONCLUSION

The commission's finding that employer proved the statutory elements of its defense that claimant willfully breached a workplace safety rule is not before us on appeal. We conclude that the commission did not err in finding that employer made the required *bona fide* effort to require claimant to follow the back brace rule and that claimant's claim for workers' compensation benefits is barred under Code § 65.2-306(A)(5). We further conclude that claimant failed to preserve in the commission the argument that he raises in his second assignment of error concerning the duration of his disability. Accordingly, for the foregoing reasons, we affirm the judgment of the commission.

Affirmed.