UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Judges Alston, O'Brien and AtLee
Argued at Fredericksburg, Virginia


RODELL CALLAHAN

MEMORANDUM OPINION[*] BY
v.      Record No. 0661-18-4              JUDGE ROSSIE D. ALSTON, JR.
                                          OCTOBER 23, 2018

RAPPAHANNOCK GOODWILL AND
 PENNSYLVANIA MANUFACTURERS ASSOCIATION
 INSURANCE CO.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Michael Herdman (Chasen & Boscolo, P.C., on brief), for
> appellant.
>
> Steven H. Theisen (Midkiff, Muncie, & Ross, P.C., on brief), for
> appellees.


Rodell Callahan (appellant) appeals the determination of the Workers' Compensation

Commission (Commission), which denied his claim based on a factual finding that appellant

willfully violated known safety rules. Appellant specifically contends that the safety rules were

not promulgated for the employees' benefit nor were they strictly enforced. We affirm the

Commission.

## I. BACKGROUND

Appellant was employed by Rappahannock Goodwill (appellee). Part of his employment

responsibilities included driving a company truck to transport donated goods to appellee's

warehouse. On October 10, 2016, appellant sustained injuries while unloading donated goods

from a company truck. Appellant filed a claim for wage loss and medical benefits. Prior to the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidentiary hearing before the deputy commissioner, appellee raised the defense that appellant willfully violated known safety rules.[1]

At the hearing, appellant amended his claim, seeking temporary total disability benefits from the injury date and continuing, in addition to medical benefits. Appellant then testified about the injury date. Appellant transported goods in a company truck to appellee's warehouse. He drove into the lot and pulled up to the loading dock. According to appellant, he complied with all safety rules before exiting the truck by shifting into neutral, engaging the emergency brake, and inserting wheel chocks under the front and back tires; one wheel chock was in the truck and the other was chained to the loading dock. Appellant then pulled the metal ramp down, which hooked onto the back of the truck. Appellant retrieved the forklift so he could unload the "Gaylord."[2] Appellant maneuvered the forklift into the back of the truck and picked up a wooden pallet on top of which sat the "Gaylord." As appellant reversed the forklift, the truck began to roll away from the loading dock. Appellant posited that the weight of the forklift caused the truck to bounce, which could have "knocked the gear off and caused [the truck] to roll." This resulted in appellant falling off the back of the truck while still astride the forklift.

Appellant asserted that he never received safety training and stated that he was hired for his experience. Yet, appellant admitted that during the interview process, he received an employee manual which contained appellee's vehicle safety policy. It stated "[d]rivers are responsible for the security of [trucks] assigned to them. The vehicle engine must be shut off, ignition keys removed, and vehicle doors locked whenever the vehicle is left unattended."

---

[1] Although appellee's defense initially included "willful misconduct" language found in Code § 65.2-306(A)(1), considering the opinions, assignment of error, the parties' briefs, and oral arguments, we confine our analysis to whether appellant willfully violated known safety rules, as discussed in Code § 65.2-306(A)(5).

[2] It is a cardboard box "maybe four[-to-]five f[ee]t deep" which varies in weight depending on the goods it contains.

- 2 -

Appellant also noted that at some point prior to the injury date, Heidi Dotson, appellee's senior manager of after-market and donated goods' transportation, instructed him to use wheel chocks and not to keep the truck idling. Appellant confirmed that he was assigned to veteran employees and stated their primary purpose was to familiarize appellant with routes. Appellant did concede that one of the veteran employees reminded him to turn off the ignition and insert the wheel chocks. Appellant also acknowledged that he attended two safety meetings led by Dotson in August and September but could not recall the nature of the meetings in great detail. Appellant maintained that he informed Dotson that the wheel chocks were deteriorating and claimed that the brakes on the truck he drove were defective; however, he did not mention these issues on the accident report.

Dotson testified. Her job duties included interviewing drivers, overseeing their training, and instructing them on vehicle safety. She confirmed that she informed appellant of safety rules during the interview process, including securing trucks by removing the key from the ignition, engaging the brake, and chocking the wheels. Dotson provided appellant with the employee manual which contained the vehicle safety rules. Appellant signed a document promising to read the manual. Dotson testified that the safety rules protect appellee's property. Beyond the interview process, Dotson confirmed veteran drivers were assigned to appellant "so they could teach [appellant] what to do." She noted appellant attended two safety meetings she facilitated and clarified the purpose of each meeting. The agenda for the August meeting mentioned topics of discussion, which included securing trucks by not idling and by locking truck doors. At some point afterwards, Dotson was informed that employees had been leaving trucks idling, but the identity of those noncompliant employees was not revealed to her. Therefore, at the September meeting, Dotson made clear that she was aware violations were occurring and admonished all employees. Dotson then reviewed the safety rules.

She then testified that appellant never mentioned issues with the wheel chocks or the truck brakes prior to the injury date. Further, that truck was serviced shortly before the injury date and the brakes were inspected shortly after. Documentation from those services did not reflect any issues with the brakes. Dotson also commented on the brake systems in the company trucks; the setting of the emergency brake differed depending on the year, make, and model of the truck. With regard to the truck appellant drove, she testified that to engage the emergency brake, it had to be pushed down. Both parties introduced several exhibits, including photographs of the truck, the wheel chocks, and the lot.

Following the evidentiary hearing, the deputy commissioner opined that appellant was barred from compensation because appellee sustained its burden of proving that appellee willfully violated known safety rules. The deputy commissioner made numerous factual findings. Appellee "established and communicated safety and property protection rules" regarding securing trucks to appellant and other employees. Appellant "acknowledged his familiarity with specific safety rules" pertaining to securing trucks. Specifically, appellant "acknowledged that he knew, according to the established rules, when parking . . . at the . . . loading dock, he was to put the [truck] in neutral, engage the parking brake, turn off the ignition, remove the keys, and place wheel chocks under the rear and front tires." With regard to the injury date, the deputy commissioner found that appellant had "parked the [truck] at the loading dock[,] . . . removed two or three carts of donations from the [truck's] cargo area," and "[drove] a forklift to remove [a 'Gaylord']." As appellant backed the forklift out of the truck, the truck "[began] to roll away from the loading dock." Unaware, appellant continued backing out "resulting in the forklift falling from the back of the [truck] and landing on the pavement." The deputy commissioner then mentioned several photographs in evidence. A photograph of the lot where appellant unloaded the truck revealed that the lot appeared to be level. Photographs of the

wheel chocks reflected that they were "in extremely poor condition." The deputy commissioner noted that Dotson authenticated the service and inspection records of the truck demonstrating that the brakes were in "good working order."

The deputy commissioner found appellee proved that the safety rules were reasonable, that they were known to appellant, and that they were promulgated for the employees' benefit. As to whether appellant intentionally violated the known safety rules, the deputy commissioner concluded that appellee also met its burden. The deputy commissioner noted appellant's testimony "does not jibe with the physical evidence." Particularly, the deputy commissioner commented

> [that w]hile [he] might accept [appellant's] opinion that the [truck] may have rocked when the forklift was driven into the cargo compartment, if [appellant] set the emergency brake and placed the defective wheel chocks under the tires as he testified, [the deputy commissioner could not] fathom any reason that the [truck] would have rolled away from the loading dock. [The deputy commissioner was] left with the inescapable conclusion that [appellant] did not perform the safety measures as he testified. It stretches credulity that the [truck] could roll away from the loading dock on a level surface with the emergency brake set and the wheel chocks, albeit defective, in place.

Acknowledging appellant's testimony that the truck was not one he usually drove and Dotson's testimony that brake systems differed depending on the truck, the deputy commissioner

> question[ed] whether an experienced commercial vehicle driver . . . would mistake whether a vehicle emergency brake was engaged. [The deputy commissioner] also note[d] that, contrary to [appellant's] testimony regarding defective brakes in the [truck], it received routine maintenance less than a month prior to [appellant's] accident, and rechecked after the accident, finding that the brakes were in working order.

The deputy commissioner rejected appellant's representation that he followed protocol because "[h]is testimony is in direct conflict with the physical evidence." In addition, "there [wa]s no credible physical or documentary evidence that there was any defect with the [truck]."

The "great weight [of the evidence] militate[d] against [appellant's] version of the events," and the deputy commissioner concluded that appellant did not comply with safety rules although he was aware of them. Accordingly, the deputy commissioner found that appellant's noncompliance was willful and "was a proximate cause of his injuries."

Consequently, appellant's claim was denied. He appealed that determination to the Commission.

The Commission affirmed the deputy commissioner's opinion and adopted the factual findings and legal conclusions. Specifically, the Commission found that appellee met its burden of proof in demonstrating that appellant "willfully breached [appellee's] safety rules." Appellee

> showed [that] the rules were adopted in part for the benefit of employees. [Appellee] brought its safety rules to [appellant's] attention. The evidence did not establish [that appellee] failed to enforce its safety rules. [Appellant] acknowledged he was aware of the rules and followed them.

Further, the Commission noted appellant's argument amounted to a request that the Commission find that the emergency brake and the wheel chocks failed. In this regard, the documentation indicated that there were no brake defects. Photographs of the lot "depict[ed] a gradual slope in the area where the truck was parked," and photographs of the wheel chocks, "although worn, [demonstrated that they] looked sufficient to prevent the accident in question if properly used." Ultimately, the Commission did "not believe [appellant] placed the wheel chocks as required." It was appellant's "[f]ailure to engage the emergency brake and to install the chocks [which] caused the [truck] to move while [appellant] was using the forklift, resulting [in] his injuries." Accordingly, appellee "proved willful misconduct and [appellant's] claim is barred."

Now comes this appeal.

- 6 -

## II. ANALYSIS

"Code § 65.2-306(A) states, in pertinent part, '[n]o compensation shall be awarded to the employee or his dependents for an injury or death caused by . . . [t]he employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . .' Code § 65.2-306(A)(5)." Layne v. Crist Elec. Contr., Inc., 64 Va. App. 342, 349, 768 S.E.2d 261, 264 (2015). "[T]he party raising a defense under Code § 65.2-306(A) 'shall have the burden of proof with respect thereto.'" Id. (quoting Code § 65.2-306(B)). That party, in this case, is appellee.

> To prevail on the defense of a willful violation of a safety rule, [appellee] must prove that: (1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act.

Gwaltney of Smithfield, Ltd. v. Hagins, 32 Va. App. 386, 393, 528 S.E.2d 162, 165 (2000) (citing Owens Brockway & Nat'l Union Fire Ins. Co. v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995) (citation omitted)). With respect to appellant's intention,

> [i]f the safety rule is reasonable and is known to the employee and for his benefit, and yet he intentionally does the forbidden act, then he is guilty of willful misconduct within the meaning of [former] § 65-35. The employer is not required to prove that the employee, with the rule in mind, purposely determined to break it.

Layne, 64 Va. App. at 350, 768 S.E.2d at 265 (quoting Mills v. Virginia Elec. & Power Co., 197 Va. 547, 552, 90 S.E.2d 124, 127 (1955)). "[T]he employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for [his] inability to obey the rule." Gwaltney of Smithfield, Ltd., 32 Va. App. at 393, 528 S.E.2d at 165-66 (quoting Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993)).

We further acknowledge that the determinations of

> [w]hether the rule is reasonable and applies to the situation from which the injury results, and whether [appellant] knowingly violated it, is a mixed question of law and fact to be decided by the [C]ommission and reviewable by this Court. But the questions of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of [appellant's] accident are issues of fact.

Owens Brockway, 20 Va. App. at 271-72, 456 S.E.2d at 161 (quoting Mills, 197 Va. at 552, 90 S.E.2d at 127). In addition, "[w]hether the evidence was sufficient to demonstrate that the safety rule was not strictly enforced is a mixed question of law and fact, and the [C]ommission's ruling is not binding on appeal." Gwaltney of Smithfield, Ltd., 32 Va. App. at 393, 528 S.E.2d at 165-66 (citing Virginia Elec. & Power Co. v. Kremposky, 227 Va. 265, 270, 315 S.E.2d 231, 234 (1984)). "Factual findings of the [C]omission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Smith-Adams v. Fairfax Cty. Sch. Bd., 67 Va. App. 584, 590, 798 S.E.2d 466, 469 (2017) (quoting Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993)). "In determining whether credible evidence exists, [this C]ourt does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

We "consider[] the evidence in the light most favorable to the prevailing party, in this case, [appellee]." Smith-Adams, 67 Va. App. at 590, 798 S.E.2d at 469. The Commission found that appellee met its burden of proof demonstrating that appellant willfully violated a known safety rule. We agree. The record supports the conclusion that reasonable safety rules regarding securing company trucks existed. These rules were communicated to appellant through several methods: Dotson informed him of the safety rules during the hiring process; appellant was given an employee manual containing the rules; appellant signed a document promising to read those

safety rules; appellant was reminded of the safety rules at two safety meetings; and finally, the safety rules were reiterated during ride-alongs with at least one veteran employee.

The Commission also ruled that the safety rules were promulgated "in part for the benefit of the employee" even though Dotson testified that the safety rules were promulgated to protect company assets. A safety rule may have numerous benefits. It is of no significant moment that the safety rules regarding securing trucks may also have been promulgated for the employees' safety. Neither the statute nor case law suggests that safety rules must be promulgated "solely" for the benefit of employees. See Owens Brockway, 20 Va. App. at 271, 456 S.E.2d at 161 (noting only that the safety rule be "promulgated for the benefit of the employee"); Fairfax Cty. Gov't v. Monroe, No. 1628-14-4, 2015 Va. App. LEXIS 125 (Va. Ct. App. April 14, 2015) (indicating that the safety rules at issue, which "mandate[ed] professional conduct in the workplace[,] have a myriad of purposes and benefit both employers and employees").[3]

The Commission also determined that appellant's violation was willful. Appellant was clearly aware of and understood the safety rules as outlined above. Appellant testified that he was compliant; he allegedly set the gear in neutral, engaged the emergency brake, removed the key from the ignition, and properly placed the wheel chocks before unloading the truck. Appellant posited that the weight of the forklift caused the truck to bounce, moving the gearshift out of place, causing the truck to roll away. Appellant further supported his theory by highlighting the deterioration of the wheel chocks and claiming that the emergency brake was defective. The Commission considered the truck's maintenance and inspection records, reflecting no brake issue. The Commission then scrutinized the photographs of the lot and the worn chocks as well as appellant's testimony. The Commission did "not believe [appellant]

---

[3] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012) (citing Rule 5A:1(f)).

placed the wheel chocks as required," and this Court finds that sufficient evidence supports the Commission's conclusion. In making that assessment, the Commission noted that the wheel chocks, even in their deteriorated state, would have prevented the accident if properly used, particularly in light of the photograph of the lot which showed, at most, a gradual slope. We further note appellant's and Dotson's testimony regarding the process of engaging the emergency brake on this particular truck was inconsistent. The Commission concluded that appellant's own failures resulted in his injuries by finding that his "[f]ailure to engage the emergency brake and to install the chocks caused the [truck] to move while [appellant] was using the forklift, resulting [in] his injuries."

In addition, appellant failed to rebut appellee's defense. The Commission found that the evidence did not establish that the safety rule was not enforced. See Mouhssine v. Crystal City Laundry, 62 Va. App. 65, 72-73, 741 S.E.2d 804, 808 (2013) (noting that "[w]hile the Virginia Workers' Compensation (the Act) has never actually included any such language in its statutory test, Virginia's case law addressing the defense . . . has included consideration of whether there was 'strict enforcement' or 'bona fide enforcement' of the applicable workplace safety rules"). This analysis concerns "the employer's efforts to achieve its employees' compliance with the workplace safety rule—not necessarily . . . any specific punishment given to a particular employee who has failed to comply." Id. at 75, 741 S.E.2d at 809 (citing Peanut City Iron & Metal Co. v. Jenkins, 207 Va. 399, 150 S.E.2d 120 (1966); 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 35.03). As stated above, these safety rules were communicated to employees in a variety of ways. When Dotson was informed that violations of these safety rules had occurred, the informants did not reveal the violators' identity. Nevertheless, Dotson took action; she admonished all employees at the September safety meeting and reiterated the safety rules. Accordingly, Dotson "made a *bona fide* effort to require

[appellant] and . . . other . . . employees to comply with [those rules]," id. at 76, 741 S.E.2d at 810, and "[did] not condone[] or acquiesce[] in [the safety rules'] violation," id. at 77, 741 S.E.2d at 810 (citing Jenkins, 207 Va. at 406, 150 S.E.2d at 125).

### III. Conclusion

Appellee sustained its burden of proving that appellant willfully violated known safety rules, and appellant failed to rebut that defense. Appellant's claim was properly denied. We affirm the Commission.

Affirmed.